UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN (GRAND RAPIDS)

IN THE MATTER OF:

Khan Aviation, Inc.,                    Bankruptcy Case No. 19-04261-swd
                                        Honorable Scott W. Dales
         Debtor.                        Chapter 11
_____/

**TRUSTEE'S MOTION FOR AUTHORITY TO SELL AIRCRAFT FREE AND CLEAR OF ALL LIENS, INTERESTS AND ENCUMBRANCES WITH LIENS, INTERESTS AND ENCUMBRANCES ATTACHING TO THE PROCEEDS OF SALE PURSUANT TO 11 U.S.C. §363 (b) and §363(f) AND TO PAY BROKER'S COMMISSION AND CLOSING COSTS**

Trustee, Kelly M. Hagan ("Trustee"), by and through her counsel, Beadle Smith, PLC, and hereby states for Trustee's Motion for Authority to Sell Aircraft Free and Clear of All Liens, Interests and Encumbrances with Liens, Interests and Encumbrances Attaching to the Proceeds of Sale pursuant to 11 U.S.C. §363 (b) and §363(f) and to Pay Broker's Commission and Closing Costs ("Motion") as follows:

1. On October 8, 2019, Khan Aviation, Inc. ("Debtor") herein filed a Voluntary Petition under Chapter 11 of the Bankruptcy Reform Act of 1978, as Amended, Title 11 ("Petition Date").

2. Subsequent to the aforementioned filing, Kelly M. Hagan was appointed the duly qualified and acting Chapter 11 Trustee in this matter.

3. Among the assets of this estate is a Cessna model 421B aircraft bearing serial number 421B0926 with two Continental GTSIO-520 engines ("Aircraft").

4. The Trustee seeks approval to sell the Aircraft free and clear of all liens, interests and encumbrances with liens and encumbrances attaching to the proceeds of the sale for the benefit of this bankruptcy estate pursuant to 11 U.S.C. §363(b) and (f).

5. The Aircraft is encumbered by a security interest granted to KeyBank National Association dated July 19, 2019 securing obligations in excess of $100,000,000.00 ("Security Agreement"). The Security Agreement is in dispute and is subject to an adversary proceeding being prosecuted by the Trustee, being Adversary Proceeding 19-80119-swd ("Adversary Proceeding"). The Adversary Proceeding asserts that the Security Agreement should be voided on various grounds

1

including 11 U.S.C. §547 and §548. The Granting of the Security Agreement was done within the 90 days of the Petition Date to secure obligations of separate entities referred to as the Interlogic Borrowers.

6. The Trustee does not believe that the Aircraft is encumbered by any other obligation except the obligation, if any, owed to KeyBank.

7. 11 U.S.C. §363(f) permits the sale of the Aircraft by the Trustee free and clear of all interests if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) the entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) its interest is in bonafide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f).

8. KeyBank consents to the sale set forth in this Motion satisfying 11 U.S.C. §363(f)(2). In addition, the Security Agreement is in a bonafide dispute as set forth in the Adversary which satisfies §363(f)(4).

9. Any transfer taxes or other taxes or fees imposed upon the sale of the Aircraft will be paid from the sale proceeds.

10. The Trustee has hired Goshen Air Center ("Broker"), to assist in the sale of the Aircraft. Broker has been very active in obtaining offers for the Trustee on the Aircraft and was instrumental in bringing the accepted offer to the Trustee.

11. The Trustee has accepted an offer for the Aircraft in the amount of Two Hundred Sixty-Five Thousand and 00/100 ($265,000.00) pursuant to the Aircraft Purchase Agreement attached hereto as Exhibit A.

12. The Trustee has reviewed sales comparisons for similar Aircraft as well as appraisals of the aircraft and believes that the purchase price for the Aircraft is fair and reasonable.

13. The Trustee seeks approval for the payment of ordinary closing costs including fees and taxes imposed upon the sale of the Aircraft, and customary fees charged by Insured Aircraft Title Service, LLC who acts as escrow agent in the transfer of the Aircraft to buyer.

14. All valid liens, interests and encumbrances attaching to the Aircraft will attach to the net proceeds from the sale of the Aircraft to the same extent and priority as if the liens were

attached to the Aircraft. The Trustee will not utilize the net proceeds from the sale without the consent of KeyBank or further order of this Court.

15. The transfer of the Aircraft will be "as is, where is" and free and clear of all liens, interests and encumbrances.

16. The sale is subject to bankruptcy court approval and any better offers submitted to the Trustee up until the deadline to object to this sale. Better offers may be submitted to Kevin M. Smith, attorney for the bankruptcy estate by mail or email at ksmith@bbssplc.com. In the event that there are competing bidders, the Trustee will establish bidding procedures to obtain the highest purchase price.

17. In order to approve a sale of the Debtor's assets outside the ordinary course of business pursuant to section 363(b), the court must find that the Debtor has articulated a sound business justification for the sale. *Stephens Indus., Inc. V. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986)*(citing Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.*), 722 F.2d 1063, 1070 (2nd Cir. 1983)). "A sale of assets is appropriate if all provisions of §363 are followed, the bid is fair, and the sale is in the best interests of the estate and its creditors." *See, Matter of Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) quoting *In re Charlesbank Laundry Co.*, 37 B.R. 20, 22 (Bankr. D. Mass. 1983). In the present case, the Trustee has set forth a legitimate reason for the sale as it will provide funds to the bankruptcy estate for the distribution to creditors if she is successful in the Adversary Proceeding. In addition, the prompt sale will reduce administrative expenses associated with maintaining and storing the Aircraft.

18. The Trustee believes that a sale of the Aircraft is in the best interest of the estate and creditors.

19. Trustee also seeks the approval of the Broker's commission. Broker's employment has been approved by this Court (DN 110). The Broker's commission is 2.5% of the gross sales price. Trustee seeks this Court's approval to pay the Broker's commission at closing.

20. After the payment of all undisputed liens, closing costs, fees and taxes, Broker's Commission and the like, the sale proceeds shall be held by the Trustee subject to a determination of the validity and extent of the attachment of the Security Agreement to the Aircraft and its proceeds.

**WHEREFORE**, the Trustee requests this Honorable Court enter the Order submitted herewith granting the Trustee authority to sell the Aircraft for the sum of $265,000.00 or better terms, authorization to pay Broker's commission, outstanding fees and taxes associated with the sale of the Aircraft, charges of the escrow agent and normal closing costs charged the Seller, a waiver of the fourteen-day stay period set forth in Federal Rules of Bankruptcy Procedure, Rule 6004(h), and for such other and further relief this Court deems just and proper.

Respectfully submitted,

BEADLE SMITH, PLC

/S/ Kevin M. Smith
By: Kevin M. Smith (P48976)
Attorneys for Trustee
445 South Livernois, Suite 305
Rochester Hills, MI 48307-2577
(248) 650-6094, Ext. 15; (248) 650-6095 (fax)
Ksmith@bbssplc.com

Date:   December 3, 2019

## AIRCRAFT PURCHASE AGREEMENT

This Aircraft Purchase Agreement ("**Agreement**") is effective as of the 25th day of November, 2019, by and between Khan Aviation Inc. ("**Seller**") and GLC Aviation, LLC ("**Buyer**").

IN CONSIDERATION of the mutual covenants contained herein, the parties agree as follows:

### ARTICLE I
### SALE OF USED AIRCRAFT

Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and deliver, and Buyer hereby agrees to buy and accept, that certain used Cessna model 421B, bearing manufacturer's serial number 421B0926, and FAA Registration Number N421GC, with two Continental GTSIO-520-H engines with serial numbers 224372-73H and 267284-R and all systems, avionics, parts and components, appliances and appurtenances installed in, on or related to the airframe or engines (collectively, "**Aircraft**").

### ARTICLE II
### DELIVERY, ELECTION NOT TO INSPECT AND ACCEPTANCE

2.1    Buyer has performed a visual inspection of the Aircraft and a review of the logbooks and has notified Seller that Buyer desires to proceed to perform the Inspection (defined below) upon issuance of an Order by the United States Bankruptcy Court for the Western District of Michigan in Case No. 19-04261-swd (the "Court") approving for sale and transfer of the Aircraft pursuant to the terms and conditions of this Agreement, free and clear of all liens, claims and encumbrances ("Sale Order"). The Deposit (as hereafter defined) shall be made at such time and be subject to the terms and conditions of this Agreement.

2.2    Buyer shall have the right, at Buyer's expense, to perform an annual inspection ("**Inspection**") of the Aircraft per the scope mutually agreed upon by Buyer and Seller and attached as Exhibit 2. The Inspection shall occur at Indiana Flight Center at Elkhart Municipal Airport (KEKM) ("**Inspection Facility**") and shall be completed by within 20 Business Days after issuance of the Sale Order. Buyer shall pay the cost of the Inspection to the Inspection Facility prior to the start the Inspection.

2.3    Within 5 Business Days (as hereafter defined) after completion of the Inspection and Buyer's receipt of any Inspection Report, Buyer shall cause the Inspection Facility to provide a copy of any written inspection report ("**Inspection Report**") to Seller and Buyer. Buyer shall accept the Aircraft in its AS IS condition or reject the Aircraft by written notice to Seller. If Buyer accepts the Aircraft, the Deposit (as hereafter defined) becomes non-refundable, subject to the terms of this Agreement. If Buyer rejects the Aircraft, the Deposit shall be returned to Buyer, after confirmation that the Inspection Facility has been paid in full and this Agreement shall be terminated with no further obligation by either party. If Buyer does not provide any written notice within the stated 5 Business Days, Buyer shall be deemed to reject the Aircraft. "**Business Day**" shall mean any day of the year other than a day on which banks in the State of Indiana or State of Oklahoma are authorized or required to close and not being a Saturday, Sunday or public holiday

1

in that place, and on a day when the FAA Civil Aircraft Registry ("**FAA Registry**") is open to accept filings.

2.4    Closing shall take place on a Business Day within 5 Business Days after Buyer has accepted the Aircraft pursuant to Section 2.3, and the sale has been approved by the Bankruptcy Court in Matter of Khan Aviation, Inc., Bankruptcy case no. 19-04261, Western District of Michigan, whichever is later and the parties agree to use reasonable commercial efforts to close no later thanJanuary 15, 2020 ("**Closing Date**"). Delivery shall take place at Seller's hangar at Elkhart Municipal Airport ("**Closing Location**"). If and in the event the Sale Order has not been issued before January 15, 2020, Buyer may elect to terminate this Agreement thereafter on written notice to Seller, in which case neither party will have any continuing obligations hereunder.

2.5    The Aircraft is being sold "AS IS WHERE IS" without warranties or representations, except for the warranty of good title.

## ARTICLE III
## RISK OF LOSS

Risk of loss, damage or destruction to the Aircraft shall pass from Seller to Buyer at the filing time of the FAA Bill of Sale (hereinafter defined) as indicated by the FAA. Prior to Closing, if the Aircraft is a total loss (as determined by the insurance underwriter), or there is damage, the repair of which would constitute a major repair as such term is defined in 14 CFR Part 43 Appendix A, then either party may terminate this Agreement upon written notice to the other within 10 Business Days after such loss or damage. Upon termination, Buyer shall pay any outstanding amounts due from Buyer to the Inspection Facility and thereafter the Escrow Agent (as hereafter defined) shall promptly refund the Deposit to Buyer and the parties shall not have any further liability or responsibility to each other hereunder.

## ARTICLE IV
## PURCHASE PRICE, PAYMENT SCHEDULE AND CLOSING

4.1    The purchase price of the Aircraft is US$265,000.00 ("**Purchase Price**").

4.2    The Purchase Price shall be paid by Buyer in accordance with the following schedule:

| AMOUNT | TIMING |
| --- | --- |
| US$5,000.00 | "**Deposit**" due upon issuance of Sale Order, subject to the terms and conditions of this Agreement. |
| Balance of Purchase Price | In immediately available U.S. funds at Closing. |

4.3    The transaction described in this Agreement shall utilize the services of Insured Aircraft Title Service, LLC, Oklahoma City, Oklahoma, USA, Attn: Joan Roberts ("**Escrow Agent**") with Buyer and Seller each responsible for one-half of the Escrow Agent fees. The document conveying the Aircraft shall be U.S. Government AC Form No. 8050-2 ("**FAA Bill of Sale**") which shall be executed and delivered to Escrow Agent on or before the Closing Date. The Deposit shall be applied to the Purchase Price at the time of Closing unless otherwise disbursed by the Escrow Agent in accordance with the terms hereof.

2

4.4     Seller hereby assigns to Buyer, effective as of the Closing Date, all transferable rights and warranties in respect of the Aircraft (whether from any manufacturer, supplier, service provider or otherwise) and any maintenance tracking programs in which the Aircraft is enrolled; provided, however, that Buyer pays any transfer fees.

4.5     Buyer has elected to not have the purchase of the Aircraft registered with the International Registry under the Cape Town Convention on International Interest in Mobile Equipment and the Protocol Specific to Aircraft Equipment ("**International Registry**"). Buyer shall have no right to, and hereby agrees that it will not, register, consent to or allow any third party to register any contract of sale, prospective contract of sale, international interest or prospective international interest on the International Registry with respect to the Aircraft until title has been conveyed to Buyer. In the event that any contract of sale, prospective contract of sale, international interest or prospective international interest has been filed or registered against the Aircraft by Buyer or any person claiming by, through, under or in connection with Buyer, in breach of this Section, Buyer shall discharge or cause the discharge of any such filing or registration immediately after notice from Seller or the Escrow Agent. Buyer agrees that Seller shall have all of the rights available to it under law or in equity, including the right of specific performance, to enforce Buyer's performance of its obligations under this Section. Such rights and obligations shall survive termination of this Agreement.

4.6     On or before the Closing Date Buyer shall (i) wire transfer the balance of the Purchase Price, its share of the escrow fees and any other amounts owed by Buyer in immediately available U.S. funds to the account of Escrow Agent; and (ii) deliver to the Escrow Agent an original signed, undated Delivery Receipt in substantially the form attached herein as Exhibit 1 and an original signed, undated FAA Registration Application. On or before the Closing Date, Seller shall (i) deliver to the Escrow Agent an original signed, undated FAA Bill of Sale; and (ii) cause any Seller's lender to pre-position an original signed, undated lien release with the Escrow Agent or such lender's FAA counsel. The "**Closing**" will consist of the following: (i) the delivery of the Aircraft at the Closing Location; (ii), the wire transfer by Escrow Agent of the amount required by Seller's lender to satisfy such lender's lien, Seller's lender's receipt of the funds and authorization to date and file the Seller's lender's lien release; (iii) the release of the FAA Bill of Sale from Seller conveying the Aircraft to Buyer free and clear of all liens, claims and encumbrances; (iv) the release of the Registration Application from Buyer for filing with the FAA; (v) wire of the balance of the Purchase Price as directed by Seller; (vi) release by Buyer of the completed Delivery Receipt to Seller. The Parties agree that the Escrow Agent shall (and shall be instructed to), as part of Closing, transfer the Purchase Price (including without limitation all payments from Buyer to Seller scheduled under Section 4.2 of this Agreement), and all other payments to be made by Buyer to Seller pursuant to this Agreement by wire transfer in immediately available funds or other acceptable payment to:

Kelly M. Hagan, Chapter 11 Trustee for Khan Aviation, Inc.

# ARTICLE V
# TAXES

5.1     Seller shall pay and be responsible for all taxes, duties or fees assessed by any federal, state or local taxing authority, including all personal property taxes, excise taxes, sales/use or similar taxes, air navigation, overflight and landing charges and any duties, fees or claims assessed or levied against the Aircraft and penalties or interest thereon (collectively, "**Taxes**") as a result of the registration, ownership and use of the Aircraft prior to Closing.

3

5.2     Buyer shall pay, be responsible for, and agrees to pay, indemnify and hold Seller harmless against, all Taxes arising as a result of the sale, purchase and delivery of the Aircraft at Closing (other than income taxes, if any) and the registration, ownership and use of the Aircraft after Closing. Such indemnity shall survive Closing and delivery of the Aircraft. In the event Seller determines applicable law requires Seller to collect any Taxes from Buyer at Closing, Buyer shall either remit to Seller such Taxes during Closing or at least 3 Business Days prior to Closing, provide to Seller a certificate of exemption evidencing Buyer's exemption from such Taxes and in a form reasonably satisfactory to Seller and if no certificate of exemption is required by the state where the Closing Location is located, Buyer shall provide to Seller a certificate of an authorized official of Buyer identifying the exemption on which it is relying and certifying that it is eligible to rely upon such exemption. On the Closing Date, Buyer shall deliver to Seller a copy of a fuel receipt reflecting the purchase of fuel for the Aircraft at the Closing Location on the Closing Date.

## ARTICLE VI
## LIMITED WARRANTY

6.1     On the Closing Date Seller shall deliver good title to the Aircraft free and clear of all liens and encumbrances, except any liens or encumbrances created or caused to be created by Buyer.

6.2     EXCEPT FOR THE WARRANTY OF TITLE SET FORTH IN SECTION 6.1 THE AIRCRAFT AND EACH PART THEREOF IS BEING SOLD HEREUNDER ON AN "AS IS, WHERE IS" WITH ALL FAULTS BASIS ON THE CLOSING DATE, WITHOUT ANY REPRESENTATION, WARRANTY OR GUARANTEE OF ANY KIND BEING MADE OR GIVEN BY SELLER, ITS SHAREHOLDERS, MEMBERS, MANAGERS, OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, ATTORNEYS AND ASSIGNS, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING STRICT LIABILITY IN TORT) AND SELLER DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS OF ANY KIND OR NATURE WHATSOEVER, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OF AIRWORTHINESS, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE AIRCRAFT, ITS DESIGN, MANUFACTURE, CONDITION, OPERATION, OR PERFORMANCE (INCLUDING ANY IMPLIED WARRANTY ARISING FROM A COURSE OF PERFORMANCE OR DEALING OR USAGE OF TRADE). BUYER HEREBY WAIVES ANY CLAIMS, RIGHTS AND REMEDIES (INCLUDING, WITHOUT LIMITATION, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGE) CAUSED BY THE AIRCRAFT OR BY BUYER'S LOSS OF USE THEREOF AND SPECIFICALLY ACKNOWLEDGES THAT SELLER SHALL NOT BE LIABLE OR RESPONSIBLE FOR ANY DEFECTS, EITHER PATENT OR LATENT, IN THE AIRCRAFT, FOR ANY LIABILITIES ARISING FROM ANY OBLIGATION, DUTY OR LIABILITY IN TORT, WHETHER OR NOT ARISING FROM THE ACTUAL OR IMPUTED NEGLIGENCE OF SELLER, OR FOR ANY DIRECT OR INDIRECT DAMAGE TO PERSONS OR PROPERTY RELATING TO OR RESULTING FROM THE AIRCRAFT, OR FOR BUYER'S LOSS OF USE, REVENUE OR PROFIT OR DIMINUTION IN VALUE OF THE AIRCRAFT OR FOR ANY INTERRUPTION IN BUYER'S BUSINESS CAUSED BY BUYER'S INABILITY TO USE THE AIRCRAFT FOR ANY REASON WHATSOEVER.    BUYER IRREVOCABLY WAIVES AND RELEASES SELLER ITS SHAREHOLDERS, DIRECTORS AND OFFICERS FROM ANY SUCH WARRANTIES. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY SPECIAL, INDIRECT,

CONSEQUENTIAL, OR INCIDENTAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF USE, REVENUES, OR PROFITS. THE TERMS OF THIS DISCLAIMER SHALL SURVIVE CLOSING AND DELIVERY OF THE AIRCRAFT HEREUNDER.

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES

7.1     Each party hereby represents and warrants for itself to the other as follows, which representations and warranties shall survive the Closing:

a. It is an entity organized and validly existing under the laws of the state of its formation, having the capacity to sue and be sued in its own name, has full power, legal right and authority in all respects to execute, deliver and perform the provisions of this Agreement.

b. Its execution, delivery, and performance of this Agreement have been duly authorized by all necessary action and do not conflict with or result in any breach of any of the terms or constitute a default under any document, instrument, or agreement to which it is a party and this Agreement constitutes the legal, valid, and binding obligations of it, enforceable against it in accordance with its terms.

c. The individual executing this Agreement on its behalf has full power and authority to bind such party.

d. Seller and Buyer hereby acknowledge and confirm that (i) Seller and Buyer are unrelated third parties, (ii) Buyer is not a member of Najeeb Khan's family, (iii) Buyer is not an officer, director, or shareholder in any entity which Najeeb Khan owns or controls, and (iii) the transaction evidenced by this Agreement is an arms-length transaction negotiated in good faith between Seller and Buyer.

e. Neither it nor any of its affiliates nor any of their respective officers, directors, or employees, is a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Assets Control ("**OFAC**"), (including those named on OFAC's Specially Designated Nationals and Blocked Persons List) or by the United States Department of Commerce on the Entity List, the Denied Persons List or under the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism or is engaged in any dealings or transactions or is otherwise associated with such persons or entities or is included on any other United States Governmental list of prohibited or restricted parties. There exists no prohibition under the laws of the United States on the transaction contemplated by this Agreement related to the identity, citizenship, location or business of it. There exists no prohibition under the laws of the United States on the transaction contemplated by this Agreement related to, respectively, the purpose for which Seller used the Aircraft or the purpose for which Buyer will use the Aircraft. Buyer agrees to provide information reasonably satisfactory to Seller's lienholder to satisfy all governmental requirements.

## ARTICLE VIII
## EXCUSABLE DELAYS

Seller shall be excused from, and shall not be liable in any manner for, any delay or failure in performance under this Agreement if occasioned by cause or causes beyond its control and fault including, but not necessarily limited to, vendor delays, acts of God or the public enemy, weather, war, terrorism, insurrection, riots, hostilities, acts of government, strikes, explosions, or serious accidents, governmental priorities or allocations, or any other cause beyond Seller's reasonable control. Seller agrees to notify Buyer of the occurrence of any such cause and to carry out this Agreement as promptly as practicable after such cause is over. In the event Seller cannot deliver the Aircraft until 45 or more days after the occurrence of such delay, then Buyer and Seller shall each have the right to terminate this Agreement, upon written notice to the other, with no further obligation by either party except that the Deposit shall be returned to Buyer.

## ARTICLE IX
## DEFAULT AND REMEDIES

9.1    Failure by Buyer to take actions required herein or tender the sums due to Seller hereunder, in accordance with this Agreement, upon the performance by Seller of its obligations, shall constitute a default of this Agreement by Buyer. In the event of any default by Buyer, Seller shall promptly notify Buyer of such default in writing and Buyer shall have 3 Business Days from the receipt of such notice to cure such default. If Buyer fails to cure the default within 3 Business Days the parties agree that the Deposit shall be forfeited by Buyer, and the Deposit shall be distributed immediately by Escrow Agent to Seller as liquidated damages; Buyer and Seller hereby agreeing in good faith that actual damages, if any, to Seller would be speculative and difficult to ascertain, and the Deposit shall serve as Seller's sole and exclusive remedy, this Agreement shall terminate with no further obligation by either party and Seller may proceed to sell the Aircraft.

9.2    Failure by Seller to take actions required herein or deliver the Aircraft on the Closing Date in accordance with the terms of this Agreement, upon the performance by Buyer of its obligations, shall constitute a default of this Agreement by Seller, except as otherwise stated herein. In the event of such default by Seller, Buyer shall promptly notify Seller of such default in writing and Seller shall have 3 Business Days from the receipt of such notice to cure such default. If Seller fails to cure the default within 3 Business Days, the Deposit shall be returned to Buyer as Buyer's sole and exclusive remedy and this Agreement shall terminate with no further obligation by either party.

## ARTICLE X
## NOTICES

All communications, declarations, demands, consents, directions, approvals, instructions, requests and notices required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given or made (a) when delivered personally or (b) when transmitted electronically by e-mail (receipt acknowledged) or if such day is not a Business Day, on the next succeeding Business Day, or (c) in the case of documented overnight delivery service or certified mail, return receipt requested, delivery charge or postage prepaid, on the date shown on the delivery receipt therefor, in each case at the address set forth below. Notices delivered via e-mail after 5:00 p.m. local time at the location of the recipient shall be deemed to have been received

6

on the next following Business Day. The place to which notices or copies of notices are to be given to either party may be changed from time to time by such party by written notice to the other party.

TO SELLER:

    Kevin M. Smith
    Beadle Smith, PLC
    445 S. Livernois, Suite 305
    Rochester Hills, MI 48307
    Phone: 248-650-6094
    E-mail: Ksmith@bbssplc.com

TO BUYER:

    GLC Aviation, LLC
    c/o Kruggel Lawton CPAs
    210 South Michigan St., Suite 200
    South Bend, IN 46601
    Attn: Ryan Rans
    Phone: 574.289.4011
    E-mail: rrans@greatlakescapital.com

TO ESCROW AGENT:

    Insured Aircraft Title Service, LLC
    21 E. Main Street, Suite 100
    Oklahoma City, OK 73104
    Phone 405-681-6663
    Attention:  Joan Roberts
    E-mail: jroberts@insuredaircraft.com

## ARTICLE XI
## MISC

11.1    Each party agrees to indemnify and hold harmless the other party from and against any and all liabilities, losses, costs, damages, claims and expenses, including reasonable attorneys' fees and expenses, incurred because of any claim by any broker or agent claiming by, through or under the indemnifying party for any fee, commission or other compensation with respect to the purchase and sale of the Aircraft, which indemnity shall survive Closing and delivery of the Aircraft. Each party shall bear its own transaction costs and expenses.

11.2    The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All of the Exhibits attached hereto are incorporated herein and made a part of this Agreement by this reference thereto. No modification, amendment, or assignment of this Agreement shall be effective unless it is in writing and signed by the party to be bound or its authorized representative. The obligations or rights of the parties under this Agreement may not be assigned or delegated in whole or in part.

11.3    This Agreement inures to the benefit of the parties hereto, their successors and permitted assigns and shall not create any rights in any other persons or entities. Neither Buyer nor Seller may assign this Agreement without the prior written consent of the other party.

11.4   This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of Indiana, without regard to its choice of laws provisions. All rights of the parties are separate and cumulative. Any failure at any time of any party hereto to enforce any provision of this Agreement shall not constitute a waiver of such provision or prejudice the right of such party to enforce such provision at any subsequent time. Unless stated expressly to the contrary herein, time is of the essence for all actions pursuant to this Agreement.

11.5   This Agreement sets forth the entire contract between the parties and supersedes all previous communications, letters of intent, representations, or agreements whether oral or written, between the parties with respect to the sale and purchase of the Aircraft, including, but not limited to the letter from Buyer to Seller dated August 15, 2019 with respect to the Aircraft. This Agreement may be executed in any number of separate counterparts, all such counterparts together constituting one and the same instrument. Each party may transmit its signature by email or other electronic transmission and any such counterpart of this Agreement or any Exhibit shall have the same force and effect as an original. If any one or more provisions of this Agreement are prohibited or unenforceable, such prohibition or unenforceability in any respect in any jurisdiction shall not invalidate the remaining provisions or affect the validity or enforceability of such provisions in any other jurisdiction and this Agreement, with such provision omitted, shall remain in full force and effect.

11.6   Each party hereto agrees that it will treat the terms of this Agreement as confidential and will not, without the prior written consent of the other, disclose such information that is non-public to any third party, except for disclosure to its lienholders, attorneys, auditors and as may be required by applicable law or governmental regulations or as may be necessary to effect or enforce the transactions contemplated hereby, in which case the party so disclosing shall use good faith efforts to limit disclosure to such third parties on a need-to know basis. These obligations shall survive Closing and delivery of the Aircraft.

BALANCE OF PAGE INTENTIONALLY BLANK

SIGNATURE PAGE TO FOLLOW

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized agents to be effective the date first above written.

**GLC AVIATION, LLC**

By: _____
Name: Ryan Rans
Title: Managing Member

**KHAN AVIATION INC.**
**Subject to Bankruptcy Court Approval**

By: _____
Name: Kevin M. Smith
Title: Attorney for Chapter 11 Trustee, Kelly M. Hagan

ACKNOWLEDGED AND AGREED
**Insured Aircraft Title Service, LLC**

By: _____
Name:
Title:
Date: _____

# EXHIBIT 1
# DELIVERY RECEIPT

This Delivery Receipt acknowledges full and satisfactory delivery of that certain used Cessna model 421B, bearing manufacturer's serial number 421B0926, and FAA Registration Number N421GC, with two [[Continental GTSIO-520-H engines with serial numbers 224372-73H and 267284-R]], and all systems, avionics, parts and components, appliances and appurtenances installed in, on or related to the airframe or engines, along with all aircraft log books in Seller's possession (collectively, "**Aircraft**") as provided in that certain Aircraft Purchase Agreement dated as of _____, 2019 ("**Agreement**") between Khan Aviation Inc. ("**Seller**") and GLC Aviation, LLC ("**Buyer**").

The Aircraft is received by Buyer on the date and at the location set forth below and is determined by Buyer to be in good order and condition and acceptable to Buyer.

Location of Delivery: _____

Time and Date of Delivery: _____, 201\_ at _____

Total Airframe Hours  _____        Landings  _____
Left Engine Hours     _____        Cycles    _____
Right Engine Hours    _____        Cycles    _____

**Buyer:**

GLC Aviation, LLC

By: _____
Name: Ryan Rans
Title: Managing Member

**EXHIBIT 2**
**SCOPE OF THE ANNUAL INSPECTION**