**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

IN RE:

KHAN AVIATION, INC.,

                Debtor.

Bankruptcy No. 19-04261-SWD
Honorable Scott W. Dales
Chapter 11

**MOTION OF PNC EQUIPMENT FINANCE, LLC FOR AN ORDER**
**GRANTING RELIEF FROM THE AUTOMATIC STAY**

PNC Equipment Finance, LLC ("Movant"), by its undersigned counsel, files this Motion for an Order Granting Relief from the Automatic Stay ("Motion"), and in support thereof, respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of this proceeding and the Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein is 11 U.S.C. §§ 362(d).

**BACKGROUND**

**The Aircraft Loan**

4. On or about October 8, 2019 (the "Petition Date"), Khan Aviation, Inc. (the "Debtor"), and other affiliated entities, each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of Michigan (the "Bankruptcy Court").

5.      On October 28, 2019, the Bankruptcy Court entered an order appointing the Kelly M. Hagan the chapter 11 trustee ("Trustee") in this Debtor's case.

6.      The Movant believes that the Trustee is tasked with liquidating the assets of this Debtor's estate.

7.      Prior to the commencement of this chapter 11 bankruptcy case, the Movant made available to the Debtor a loan in the amount of Two Million, Two Hundred Fifty Thousand & 00/100 Dollars ($2,250,000.00) (the "Loan").

8.      In connection with the Loan, the Debtor executed in favor of, and delivered to, Movant, a Promissory Note dated January 20, 2017 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Note").  A true and correct copy of the Note is attached to this Motion as Exhibit A.

9.      As security for repayment of the Note, the Debtor executed a certain Aircraft Security Agreement dated January 20, 2017 (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Security Agreement"), with the Irrevocable De-Registration and Export Request Authorization dated January 20, 2017 by the Debtor in favor of Movant, attached thereto, which was recorded by the Federal Aviation Administration ("FAA") on February 15, 2017 and assigned Conveyance No. TK006755, which, among other things, grants Movant a security interest in (i) that certain 2008 CESSNA, Model Number 560, Manufacturer Serial Number 5600783 (aka 560-0783 on the International Registry drop down menu), United States FAA Registration Number N560CH, and two (2) PRATT & WHITNEY CANADA Model Number PW535B (aka PW500 SERIES on the International Registry drop down menu) engines, Manufacturer Serial Numbers PCE-DE0066 (aka DE0066 on the International

2

Registry drop down menu) and PCE-DE0067 (aka DE0067 on the International Registry drop down menu) (collectively, the "Cessna 560") and (ii) all collateral described in the Security Agreement (collectively, the "Aircraft Collateral").  A true and correct copy of the Security Agreement is attached to this Motion as <u>Exhibit B.</u>

10.    Movant perfected its first priority security interest in the Aircraft Collateral by filing the necessary documents with the FAA and the International Registry.  Evidence of Movant's perfected first priority security interest is attached to this Motion as <u>Exhibit C</u>.

11.    KeyBank, N.A. ("KeyBank") holds a security interest junior to Movant's in the same Aircraft Collateral.

12.    The Debtor has made no payments under the Note since before the Petition Date.

**<u>Trustee's Efforts to Sell Movant's Aircraft Collateral</u>**

13.    Shortly after being appointed, the Trustee inspected the aircraft and accessories (collectively, the "Aircraft Assets") owned by the Debtor.

14.    On November 5, 2019, the Trustee filed applications to employ an aircraft broker and aviation counsel to assist the Trustee with selling the Aircraft Assets.  These applications were granted by the Bankruptcy Court on November 25, 2019.

15.    Since her appointment, the Trustee has been showing and marketing for sale the Aircraft Assets, including the Cessna 560.

16.    Currently, the Cessna 560 is not in an airworthy condition.  Before this aircraft can be flown, (i)  its right precooler must be replaced, (ii) its left precooler must be repaired and (iii) phase 11 and phase 64 inspections[1] of the aircraft must be completed

---

[1] Multiple other inspections are due in 2020 with an estimated cost to complete of approximately $500,000.00.

(collectively, the "Airworthiness Work").

17.    The Trustee received a first round of offers to purchase the Cessna 560, however, those offers where conditioned on the Trustee delivering the Cessna 560 in an airworthy condition.

18.    The Trustee obtained estimates to complete the Airworthiness Work. According to the Trustee, the cost to restore the Cessna 560 to an airworthy condition is approximately $25,000.

19.    The Trustee believes that the Cessna 560 will bring more value in an airworthy condition, however, the Trustee does not have access to the funds to complete the necessary work and inspections.  As such, the Trustee solicited and received a second round of "as is-where is" offers to purchase the Cessna 560.

20.    Although the Trustee received multiple conditional offers and "as is-where is" offers to purchase the Cessna 560, she has been unable to negotiate and move for a sale of this aircraft.

## RELIEF REQUESTED UNDER 11 U.S.C. § 362(d)

21.    Movant is entitled to relief from the automatic stay pursuant to section 362(d) of

the Bankruptcy Code, which provides in relevant part that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary for an effective reorganization.

11 U.S.C. §362(d)(1)(2)(A)(B)

22.    Initially, cause exists for relief from stay as to the Cessna 560 insofar as the Debtor has not made any payments to Movant since before the Petition Date.

23.    As of the Petition Date, the Debtor's total obligations due and owing and the amount of the secured claim asserted by Movant against the Debtor is $1,678,207.69.

24.    The Trustee's sale efforts seemed to have stalled notwithstanding the fact that there are willing purchasers prepared to close a sale on the Cessna 560 for a reasonable price.  During this delay, Movant's secured claim continues to accrue post-petition interest and fees which further dilutes any value the Debtor's estate may have in the Cessna 560.  This also constitutes "cause" for relief from stay.

25.    Relief from stay is also warranted under the two-prong test set forth under section 362(d)(2) of the Bankruptcy Code as to the Cessna 560.  First, there is no equity in the Cessna 560 over and above the indebtedness due to Movant and KeyBank which is secured by this aircraft.  Second, the Trustee is tasked with liquidating the Aircraft Assets, including the Cessna 560.  Accordingly, the Cessna 560 is not necessary for an effective reorganization.

WHEREFORE, PNC Equipment Finance, LLC respectfully requests entry of an order granting the relief from the automatic stay and granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

PLUNKETT COONEY

Dated:  December 13, 2019          By:      /s/     Lisa A. Hall
                                            Lisa A. Hall
                                            333 Bridge Street NW, Suite 530
                                            Grand Rapids, MI  49504
                                            Telephone:  616.752.4615
                                            lhall@plunkettcooney.com


                                            BUCHANAN INGERSOLL & ROONEY, PC

                                            Terry A. Shulsky
                                            Union Trust Building
                                            501 Grant Street, Suite 200
                                            Pittsburgh, PA 15219-4413
                                            Telephone: 412.392.2091
                                            terry.shulsky@bipc.com

                                            Counsel for PNC Equipment Finance, LLC

# EXHIBIT A

# PROMISSORY NOTE

| | |
|---|---|
| **Borrower:** Khan Aviation, Inc. | **Lender:** PNC Equipment Finance, LLC |
| 25325 Leer Drive | 4355 Emerald St. |
| Elkhart, IN 46514 | Suite 100 |
| | Boise, ID 83706 |

**Principal Amount: $2,250,000.00**     **Date of Note: January 20, 2017**

**PROMISE TO PAY.** Khan Aviation, Inc. ("Borrower") promises to pay to PNC Equipment Finance, LLC ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Two Hundred Fifty Thousand & 00/100 Dollars ($2,250,000.00), together with interest on the unpaid principal balance from the Funding Date until paid in full.

**PAYMENT, AMORTIZATION, AND INTEREST.** Borrower's first payment is due on the first business day of the second month following the month during which the loan is funded, and all subsequent payments are due on the first business day of each month after that. All outstanding principal and all accrued interest not yet paid shall be due on the final monthly payment. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal. Borrower will pay Lender at such place as Lender may designate in writing.

    **Repayment.** Borrower's monthly principal payment will be calculated by dividing the principal amount of the Note by 120 months. Borrower's payments of principal shall be due and payable in the respective amounts and at the times as set forth on Schedule A attached hereto and made a part hereof. Interest shall be payable monthly at the same time as the principal payments at the Variable Interest Rate provided for below.

    **Interest Rate.** The interest rate on this Note will be at a rate of 2.75% over the Index (the "Variable Interest Rate"). The rate will be reset on the first calendar day of each month based on changes in an independent index which is the rate of interest published on the first calendar day of each month in The Wall Street Journal "Money Rates" listing under the caption "London Interbank Offered Rates" for a one month period (or, if no such rate is published therein for any reason, then such rate published therein on the most recent business day prior to the first day of such month) (the "Index"). The Index will be adjusted, if necessary, for any eurodollar reserve requirements as prescribed by the Board of Governors of the Federal Reserve System (or any successor) and determined by Lender to be applicable. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. If the Index determined as provided above would be less than zero, then such Index shall be deemed to be zero. Lender will tell Borrower the current Index rate upon Borrower's request. Interest on this Note is computed on an actual/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days between the day of the last payment and the day prior to the current payment. Borrower understands that Lender may make loans based on other rates as well. The interest rate will not exceed the maximum rate permitted by applicable law.

    **Interest After Default.** Upon an Event of Default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the Variable Interest Rate by an additional 4.00%. The interest rate will not exceed the maximum rate permitted by applicable law.

**TERM.** The term of this loan is 60 months. At the end of the Term, all amounts owing under this Note and the Related Documents (collectively the "Loan Documents") will be due and payable.

**RELATED DOCUMENTS.** This Note is issued in connection with the Aircraft Security Agreement of even date herewith between Borrower and Lender (the "Aircraft Security Agreement"), one or more Guaranty agreements, and such other agreements and documents executed and/or delivered in connection herewith or therewith (as amended, modified or renewed from time to time, collectively the "Related Documents"), and is secured by the property described in the Related Documents and by such other collateral as previously may have been or may in the future be granted to Lender to secure this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note: (i) the nonpayment of any principal, interest or other indebtedness under this Note when due; (ii) the occurrence of any event of default or any default and the lapse of any notice or cure period, or any Obligor's failure to observe or perform any covenant, representation, warranty or other agreement, under or contained in any Loan Document or any other document now or in the future evidencing or securing any debt, liability or obligation of any Obligor to Lender; (iii) the filing by or against any Obligor of any proceeding in bankruptcy, receivership, insolvency, reorganization, liquidation, conservatorship or similar proceeding (and, in the case of any such proceeding instituted against any Obligor, such proceeding is not dismissed or stayed within 30 days of the commencement

**⬧ PNC**
**AVIATION FINANCE**

thereof, provided that Lender shall not be obligated to advance additional funds hereunder during such period); (iv) any assignment by any Obligor for the benefit of creditors, or any levy, garnishment, attachment or similar proceeding is instituted against any property of any Obligor held by or deposited with Lender; (v) a default with respect to any other indebtedness of any Obligor for borrowed money, if the effect of such default is to cause or permit the acceleration of such debt; (vi) the commencement of any foreclosure or forfeiture proceeding, execution or attachment against any collateral securing the obligations of any Obligor to Lender; (vii) the entry of a final judgment against any Obligor and the failure of such Obligor to discharge the judgment within ten (10) days of the entry thereof; (viii) any change in any Obligor's business, assets, operations, financial condition or results of operations that has or could reasonably be expected to have any material adverse effect on any Obligor; (ix) any Obligor ceases doing business as a going concern; (x) any representation or warranty made by any Obligor to Lender in any Loan Document or any other documents now or in the future evidencing or securing the obligations of any Obligor to Lender, is false, erroneous or misleading in any material respect; (xi) the revocation or attempted revocation, in whole or in part, of any guarantee by any Obligor; or (xii) the death, incarceration, indictment or legal incompetency of any individual Obligor or, if any Obligor is a partnership or limited liability company, the death, incarceration, indictment or legal incompetency of any individual general partner or member. As used herein, the term "**Obligor**" means any Borrower and any guarantor of, or any pledgor, mortgagor or other person or entity providing collateral support for, the Borrower's obligations to Lender existing on the date of this Note or arising in the future.

**LENDER'S RIGHTS.** Upon an Event of Default, Lender may (1) declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount, and/or (2) exercise any rights and remedies set forth in the Aircraft Security Agreement and the Related Documents.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and legal expenses, incurred in connection with the enforcement of this Note, the Aircraft Security Agreement, or the Related Documents. Lender may hire or pay someone else to help enforce this Note, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**LOAN ASSUMPTION.** This Note and Related Documents are fully assumable by a qualified buyer provided that the buyer is approved by Lender in its sole discretion. The Borrower or the buyer assuming this loan must pay an assumption fee equal to 0.75% of the unpaid principal balance plus any and all third-party expenses incurred in connection with the assumption.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may, in its sole discretion, renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. Capitalized terms not defined in this Note shall have the same definition given such terms in the Aircraft Security Agreement, the Related Documents, or other loan documents executed by Borrower.

**PREPAYMENT.** The Borrower must give written notice at least forty-five (45) days prior to the day the loan is prepaid. Upon prepayment of this Note, Lender is entitled to interest on the outstanding loan balance through the date of early payment. Borrower may pay all but not less than all of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: PNC Equipment Finance, LLC; 4355 Emerald St.; Suite 100; Boise, ID 83706. Lender is entitled to the following refundable premium payable at the time of prepayment, which may be refunded as set forth below (the "Refundable Premium"): (a) if such early payment occurs during the first loan year, one percent of the unpaid principal balance; (b) if such early payment occurs during the second loan year, one percent of the unpaid principal balance. After the second loan year, no early payment premium shall apply. Lender will refund the Refundable Premium if Lender makes a new loan against Borrower's replacement aircraft within six months of the early payment date provided that the amount of the new loan is equal to or greater than the outstanding balance of the Note. Except as provided

**PNC**
**AVIATION FINANCE**

in the previous sentence, Lender shall be entitled to retain the Refundable Premium. Notwithstanding anything to the contrary above, Lender will have no obligation to enter into a new loan or refund the Refundable Premium if the new loan is not approved by Lender in its sole discretion.

**LOAN PARTICIPATION.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of the Note and Related Documents or of one or more participation interests in the Note and Related Documents to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Note and Related Documents, and Borrower hereby waives any rights to privacy that Borrower may have with respect to such matters.

**LATE CHARGE.** If a payment is one (1) day or more late, Borrower will be charged $750. Provided, however, Borrower will not be charged a late fee if the payment is late due to an error on the part of Lender's or Borrower's financial institution. Borrower agrees that the amount of such late charge represents a reasonable estimate of the cost to Lender of processing a delinquent payment and that the acceptance of any late charge shall not constitute a waiver of default with respect to the overdue amount or prevent Lender from exercising any other available rights and remedies.

**GOVERNING LAW AND JURISDICTION.** This Note, the Aircraft Security Agreement, and the Related Documents have been delivered to Lender and accepted by Lender in the State of Idaho. This Note, the Aircraft Security Agreement, and the Related Documents will be governed by, construed and enforced in accordance with federal laws and the laws of the State of Idaho. If there is a lawsuit, Borrower consents to the jurisdiction of all state and federal courts located within Idaho, and Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Ada County, State of Idaho.

**SUCCESSOR INTERESTS.** The terms of this Note, the Aircraft Security Agreement, and the Related Documents shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and Lender's successors and assigns.

**IMPORTANT INFORMATION ABOUT PHONE CALLS.** By providing telephone number(s) to Lender, now or at any later time, Borrower authorizes Lender and its affiliates and designees to contact Borrower regarding Borrower account(s) with Lender or its affiliates, whether such accounts are Borrower individual accounts or business accounts for which Borrower is a contact, at such numbers using any means, including but not limited to placing calls using an automated dialing system to cell, VoIP or other wireless phone number, or leaving prerecorded messages or sending text messages, even if charges may be incurred for the calls or text messages. Borrower consents that any phone call with Lender may be monitored or recorded by Lender.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE PAYMENT, AMORTIZATION, AND INTEREST PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

KHAN AVIATION, INC.

By: _____
    Najeeb A. Khan, President of Khan Aviation, Inc.

# Khan Aviation, Inc.

Schedule A to Promissory Note dated January 20, 2017

| Payment Number | Payment Date | Principal | Principal Payments Made |
|---|---|---|---|
| 1 | 3/1/17 | 18,750.00 | 18,750.00 |
| 2 | 4/1/17 | 18,750.00 | 37,500.00 |
| 3 | 5/1/17 | 18,750.00 | 56,250.00 |
| 4 | 6/1/17 | 18,750.00 | 75,000.00 |
| 5 | 7/1/17 | 18,750.00 | 93,750.00 |
| 6 | 8/1/17 | 18,750.00 | 112,500.00 |
| 7 | 9/1/17 | 18,750.00 | 131,250.00 |
| 8 | 10/1/17 | 18,750.00 | 150,000.00 |
| 9 | 11/1/17 | 18,750.00 | 168,750.00 |
| 10 | 12/1/17 | 18,750.00 | 187,500.00 |
| 11 | 1/1/18 | 18,750.00 | 206,250.00 |
| 12 | 2/1/18 | 18,750.00 | 225,000.00 |
| 13 | 3/1/18 | 18,750.00 | 243,750.00 |
| 14 | 4/1/18 | 18,750.00 | 262,500.00 |
| 15 | 5/1/18 | 18,750.00 | 281,250.00 |
| 16 | 6/1/18 | 18,750.00 | 300,000.00 |
| 17 | 7/1/18 | 18,750.00 | 318,750.00 |
| 18 | 8/1/18 | 18,750.00 | 337,500.00 |
| 19 | 9/1/18 | 18,750.00 | 356,250.00 |
| 20 | 10/1/18 | 18,750.00 | 375,000.00 |
| 21 | 11/1/18 | 18,750.00 | 393,750.00 |
| 22 | 12/1/18 | 18,750.00 | 412,500.00 |
| 23 | 1/1/19 | 18,750.00 | 431,250.00 |
| 24 | 2/1/19 | 18,750.00 | 450,000.00 |
| 25 | 3/1/19 | 18,750.00 | 468,750.00 |
| 26 | 4/1/19 | 18,750.00 | 487,500.00 |
| 27 | 5/1/19 | 18,750.00 | 506,250.00 |
| 28 | 6/1/19 | 18,750.00 | 525,000.00 |
| 29 | 7/1/19 | 18,750.00 | 543,750.00 |
| 30 | 8/1/19 | 18,750.00 | 562,500.00 |
| 31 | 9/1/19 | 18,750.00 | 581,250.00 |
| 32 | 10/1/19 | 18,750.00 | 600,000.00 |
| 33 | 11/1/19 | 18,750.00 | 618,750.00 |
| 34 | 12/1/19 | 18,750.00 | 637,500.00 |
| 35 | 1/1/20 | 18,750.00 | 656,250.00 |
| 36 | 2/1/20 | 18,750.00 | 675,000.00 |
| 37 | 3/1/20 | 18,750.00 | 693,750.00 |
| 38 | 4/1/20 | 18,750.00 | 712,500.00 |
| 39 | 5/1/20 | 18,750.00 | 731,250.00 |
| 40 | 6/1/20 | 18,750.00 | 750,000.00 |
| 41 | 7/1/20 | 18,750.00 | 768,750.00 |
| 42 | 8/1/20 | 18,750.00 | 787,500.00 |
| 43 | 9/1/20 | 18,750.00 | 806,250.00 |
| 44 | 10/1/20 | 18,750.00 | 825,000.00 |
| 45 | 11/1/20 | 18,750.00 | 843,750.00 |
| 46 | 12/1/20 | 18,750.00 | 862,500.00 |
| 47 | 1/1/21 | 18,750.00 | 881,250.00 |
| 48 | 2/1/21 | 18,750.00 | 900,000.00 |
| 49 | 3/1/21 | 18,750.00 | 918,750.00 |
| 50 | 4/1/21 | 18,750.00 | 937,500.00 |
| 51 | 5/1/21 | 18,750.00 | 956,250.00 |
| 52 | 6/1/21 | 18,750.00 | 975,000.00 |
| 53 | 7/1/21 | 18,750.00 | 993,750.00 |
| 54 | 8/1/21 | 18,750.00 | 1,012,500.00 |
| 55 | 9/1/21 | 18,750.00 | 1,031,250.00 |
| 56 | 10/1/21 | 18,750.00 | 1,050,000.00 |
| 57 | 11/1/21 | 18,750.00 | 1,068,750.00 |
| 58 | 12/1/21 | 18,750.00 | 1,087,500.00 |

| 59 | 1/1/22 | 18,750.00 | 1,106,250.00 |
| 60 | 2/1/22 | 1,143,750.00 | 2,250,000.00 |

# EXHIBIT B

DEPARTMENT OF TRANSPORTATION

FEDERAL AVIATION ADMINISTRATION
FAA AIRCRAFT REGISTRY
P.O. Box 25504
Oklahoma City, Oklahoma 73125

## AIRCRAFT SECURITY AGREEMENT

| | |
|---|---|
| **NAME & ADDRESS OF BORROWER:**<br><br>Khan Aviation, Inc.<br>25325 Leer Drive<br>Elkhart, IN 46514<br><br>**NAME & ADDRESS OF SECURED PARTY/LENDER:**<br><br>PNC Equipment Finance, LLC<br>4355 Emerald St.<br>Suite 100<br>Boise, ID 83706<br><br>**NAME & ADDRESS OF GRANTOR:**<br><br>Khan Aviation, Inc.<br>25325 Leer Drive<br>Elkhart, IN 46514 | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>**ABOVE SPACE<br>FOR FAA USE ONLY** |

**THIS AIRCRAFT SECURITY AGREEMENT** dated January 20, 2017, is made and executed between Khan Aviation, Inc. ("Grantor") and PNC Equipment Finance, LLC ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a continuing security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL.** The word "Collateral" as used in this Agreement means the following described Airframe, Engines and Contracts, as defined herein:

| YEAR MFG | AIRCRAFT MANUFACTURER | MODEL NUMBER | SERIAL NUMBER | FAA REGISTRATION NUMBER |
|---|---|---|---|---|
| 2008 | CESSNA | 560 | 5600783 (aka 560-0783 on the International Registry drop down menu) | N560CH |
| **ENGINE MAKE** | **MODEL NUMBER (S)** | **SERIAL NUMBER (S)** | | |
| PRATT & WHITNEY CANADA | PW535B (aka PW500 SERIES on the International Registry drop down menu) | PCE-DE0066 (aka DE0066 on the International Registry drop down menu) | | |
| PRATT & WHITNEY CANADA | PW535B (aka PW500 SERIES on the International Registry drop down menu) | PCE-DE0067 (aka DE0067 on the International Registry drop down menu) | | |
| **PROPELLER MAKE** | **MODEL NUMBER (S)** | **SERIAL NUMBER (S)** | | |



Page 1 of 15

The word "Aircraft" also means and includes without limitation, (a) the Airframe, (b) the Engines, (c) any propellers, and (d) related log books, manuals, diagrams and records.

The word "Airframe" means the Aircraft's airframe, together with any and all parts, appliances, components, instruments, accessories, accessions, attachments, equipment, or avionics (including, without limitation, radio, radar, navigation systems, or other electronic equipment) installed in, appurtenant to, or delivered with or in respect of such airframe.

The word "Engines" means any engines described above together with any other aircraft engines which either now or in the future are installed on, appurtenant to, or delivered with or in respect of the Airframe, together with any and all parts, appliances, components, accessories, accessions, attachments or equipment installed on, appurtenant to, or delivered with or in respect of such engines. The word "Engines" shall also refer to any replacement aircraft engine which, under this Agreement, is required or permitted to be installed upon the Airframe.

The word "Contracts" means any and all agreements, contracts, service contracts, repair contracts, maintenance contracts, including the Engine Maintenance Program, insurance contracts, leases, purchase agreements, bills of sale and assignments, and any other instruments, contracts, or agreements of any kind with respect to the Collateral.

**DURATION.** This Agreement, including any representations, warranties and covenants contained herein, shall remain continuing, in full force and effect until such time as the Indebtedness secured hereby, including principal, interest, costs, expenses, attorneys' fees and other fees and charges, shall have been paid in full, together with all additional sums that Lender may pay or advance on Grantor's behalf and interest thereon as provided in this Agreement.

**REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Grantor represents, warrants and covenants to Lender at all times while this Agreement is in effect as follows:

**Title.** Grantor warrants that Grantor is the lawful owner of the Collateral and holds good and marketable title to the Collateral, free and clear of all Encumbrances except the lien of this Agreement. Grantor is, or concurrent with the completion of the transactions contemplated by this Agreement will be, the registered owner of the Aircraft pursuant to a proper registration under the Transportation Code, and Grantor qualifies in all respects as a citizen of the United States as defined in the Transportation Code. If Grantor acquired its interest in the Aircraft on or after the effective date of the Convention, the ownership rights of Grantor shall be the subject of a valid and subsisting registered contract of sale at the International Registry. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons. The Collateral is not and will not be registered under the laws of any foreign country, and Grantor is and will remain a citizen of the United States as defined in the Transportation Code.

**Authority; Binding Effect, etc.** Grantor is a corporation which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Indiana. Grantor is duly authorized to transact business in all other states in which Grantor is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Grantor is doing business. Grantor has the full right, power and authority to enter into the Note, the Related Documents, and this Agreement and to grant a security interest in the Collateral to Lender. The Note, the Related Documents, and this Agreement are binding upon Grantor as well as Grantor's successors and assigns, and are legal, valid and binding obligations of Grantor and are legally enforceable in accordance with their terms. Grantor's principal place of business is 25325 Leer Drive, Elkhart, IN 46514, and unless Grantor has designated otherwise in writing, Grantor's principal place of business is the office at which Grantor keeps its complete logs, manuals, books and records including its complete logs, manuals, books and records concerning the Collateral. Grantor's exact legal name is: Khan Aviation, Inc. Grantor has not used any trade, assumed or previous names within the past five years. Grantor's organizational identification number is 1993011157. Grantor has not merged with or into, or transferred all or substantially all of its assets to, any other entity within the past five years. Grantor was situated in the United States, State of Indiana at the time of the conclusion of this Agreement. Grantor has the power to dispose of the Aircraft, as contemplated in the Convention.

**Authorization.** Grantor's execution, delivery, and performance of the Note, this Agreement and all the Related Documents have been duly authorized by all necessary action by Grantor and do not conflict with, result in a violation of, or constitute a default under (1) any provision of Grantor's articles of organization or membership agreements, or bylaws or articles of incorporation, or any agreement or other instrument binding upon Grantor or (2) any law, governmental regulation, court decree, or order applicable to Grantor or to Grantor's properties.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Grantor is pending or threatened, and no other event has occurred which may materially adversely affect Grantor's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.



**Taxes.** All of Grantor's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges in connection with the Aircraft and the Collateral have been paid in full, except those presently being or to be contested by Grantor in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Information.** All information heretofore or contemporaneously herewith furnished by Grantor to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby (including without limitation the description of the Aircraft) is, and all information hereafter furnished by or on behalf of Grantor to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

**Aircraft and Log Books.** Grantor will keep accurate and complete logs, manuals, books, and records relating to the Collateral, and will provide Lender with copies of such reports and information relating to the Collateral as Lender may reasonably require from time to time.

**Airframe and Engines.** Each Airframe is type certified to transport at least eight persons including crew, or goods in excess of 2750 kilograms and each of the Engines has at least 1750 pounds of thrust or at least 550 rated take off shaft horsepower.

**Perfection of Security Interest.** The security interest granted herein constitutes a valid and subsisting International Interest in the Aircraft under the Convention. Grantor grants and covenants to continue a first priority perfected security interest (including an International Interest) in and to the Collateral in favor of Lender. Grantor agrees to prepare and file financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interests in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper if not delivered to Lender for possession by Lender. In particular, Grantor will perform, or will cause to be performed, upon Lender's request, each and all of the following: (1) Record, register and file this Agreement (and the IDERA, as defined below), together with such notices, financing statements or other documents or instruments as Lender may request from time to time to carry out fully the intent of this Agreement, with the FAA in Oklahoma City, Oklahoma, United States of America and other governmental agencies, either concurrent with the delivery and acceptance of the Collateral or promptly after the execution and delivery of this Agreement; (2) Take all actions necessary to initiate or consent to the registration of an International Interest in the Aircraft (or at Lender's option, a Prospective International Interest) with the International Registry, (3) Take all actions necessary to initiate or consent to the registration of any other interests or rights pertaining to the Collateral with the International Registry, as requested in the sole discretion of Lender, (4) Furnish to Lender evidence of every such recording, registering, and filing; and (5) Execute and deliver or perform any and all acts and things which may be reasonably requested by Lender with respect to complying with or remaining subject to the Geneva Convention, the Convention, the International Registry, the laws and regulations of the FAA, the laws of the United States and the laws and regulation of any of the various states or countries in which the Collateral is or may fly over, operate in, or become located in. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the sole purposes of preparing, executing, and/or filing any documents necessary to perfect, amend or to continue the security interests granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Convention Requirements.** Prior to funding by Lender, (a) Grantor shall establish a valid and existing account with the International Registry, appoint an Administrator and/or a Professional User acceptable to Lender to initiate or consent to registrations at the International Registry with regard to the Collateral, and initiate the registration of an International Interest (or, at Lender's option, a Prospective International Interest) in the Collateral, with all such steps being completed except for the consent of Lender, (b) Grantor's initiation of such registration at the International Registry shall not have expired or lapsed; (c) Grantor shall execute and Lender shall have received a fully completed and originally executed Irrevocable De-Registration and Export Request Authorization ("IDERA"), in the form attached hereto as Exhibit A and acceptable to the FAA and Lender, and (d) Grantor's Contract of Sale shall be registered and searchable in the International Registry.

**Performance of Contracts.** Grantor hereby undertakes to perform all of its obligations under the Note, this Agreement, any Related Agreements and any Contracts and to procure the performance of third parties (other than Lender) under the Related Agreements and any Contracts.



Page 3 of 15

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) (if Grantor is a business) change in the ownership of the Grantor or management of the Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; (8) merger of Grantor with or into, transfer by Grantor of all or substantially all of its assets to, or acquisition by Grantor of all or substantially all of the assets of, any other entity; or (9) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**Location of the Collateral.** Grantor will hangar or keep the Collateral at its home airport or base location (the "Home Airport"), which is:

**Elkhart Municipal Airport (EKM)**

**Maintenance, Use, Repairs, Inspections, and Licenses.** Grantor, at its expense, shall do, or cause to be done, in a timely manner with respect to the Collateral each and all of the following:

(1) Grantor shall maintain and keep the Collateral in as good condition and repair as it is on the date of this Agreement, ordinary wear and tear excepted.

(2) Grantor shall maintain and keep the Aircraft in good order and repair and in airworthy condition in accordance with the requirements of the FAA and each of the manufacturers' manuals and mandatory service bulletins and each of the manufacturers' non-mandatory service bulletins which relate to airworthiness, and as recommended or required by any rules, regulations, or guidelines of the FAA and/or the manufacturer.

(3) Grantor shall replace in or on the Airframe, any and all Engines, parts, appliances, instruments or accessories which may be worn out, lost, destroyed or otherwise rendered unfit for use.

(4) Grantor shall cause to be performed, on all parts of the Aircraft, all applicable mandatory airworthiness directives, Federal Aviation Regulations, special Federal Aviation Regulations, and manufacturers' service bulletins relating to airworthiness, the compliance date of which shall occur while this Agreement is in effect.

(5) Grantor shall be responsible for all required inspections of the Aircraft and licensing or re-licensing of the Aircraft in accordance with all applicable FAA and other governmental requirements. Grantor shall at all times cause the Aircraft to have on board and in a conspicuous location a current Certificate of Airworthiness issued by the FAA.

(6) All inspections, maintenance, modifications, repairs, and overhauls of the Aircraft (including those performed on the Airframe, the Engines or any components, appliances, accessories, instruments, or equipment) shall be performed by personnel authorized by the FAA to perform such services.

(7) If any Engine, component, appliance, accessory, instrument, equipment or part of the Aircraft shall reach such a condition as to require overhaul, repair or replacement, for any cause whatever, in order to comply with the standards for maintenance and other provisions set forth in this Agreement, Grantor may:

(a) Install on or in the Aircraft such items of substantially the same type in temporary replacement of those then installed on the Aircraft, pending overhaul or repair of the unsatisfactory item; provided, however, that such replacement items must be in such a condition as to be permissible for use upon the Aircraft in accordance with the standards for maintenance and other provisions set forth in this Agreement; provided further, however, that Grantor at all times must retain unencumbered title to any and all items temporarily removed; or

(b) Install on or in the Aircraft such items of substantially the same type and value in permanent replacement of those then installed on the Aircraft; provided, however, that such replacement items must be in such condition as to be permissible for use upon the Aircraft in accordance with the standards for maintenance and other provisions set forth in this Agreement; provided further, however, that in the event Grantor shall be required or permitted to install upon the Airframe or any Engine, components, appliances, accessories, instruments, engines, equipment or parts in permanent replacement of those then installed on the Airframe or such Engine, Grantor may do so provided that, in addition to any other requirements of this Agreement:

(i) Lender is not divested of its security interest in and lien upon any item removed from the Aircraft and that no such removed item shall be or become subject to the lien or claim of any person, unless and



until such item is replaced by an item of the type and condition required by this Agreement, title to which, upon its being installed or attached to the Airframe, is validly vested in Grantor, free and clear of all liens and claims, of every kind or nature, of all persons other than Lender;

(ii) Grantor's title to every substituted item shall immediately be and become subject to the security interests and liens of Lender and each of the provisions of this Agreement, and each such item shall remain so encumbered and so subject unless it is, in turn, replaced by a substitute item in the manner permitted in this Agreement;

(iii) If an item is removed from the Aircraft and replaced in accordance with the requirements of this Agreement, and if the substituted item satisfies the requirements of this Agreement, including the terms and conditions above, then the item which is removed shall thereupon be free and clear of the security interests and liens of Lender; and

(iv) Such items are approved in writing by Lender in its sole discretion.

(8) In the event that any Engine, component, appliance, accessory, instrument, equipment or part is installed upon the Airframe, and is not in substitution for or in replacement of an existing item, such additional item shall be considered as an accession to the Airframe.

(9) If the Engines are enrolled in or become enrolled in an "Engine Maintenance Program" at the time of loan application or anytime thereafter, Grantor represents, warrants, and covenants that the Engines will continue to be enrolled in such Engine Maintenance Program while this Agreement is in effect and until all amounts owed to Lender are paid in full. "Engine Maintenance Program" means the engine maintenance program provided by or similar to, but not limited to, any of the following: AlliedSignal's MSP, Allison's Power by the Hour, CFE Corp.'s CSP, Jet Support Services Inc.'s JSSI, Pratt & Whitney's ESP, Williams/Rolls' PBH, and EMS.

(10) Grantor shall maintain all records, logs, and materials relating to the Aircraft required by, and in accordance with, the FAA and its rules and regulations, regardless of upon whom such requirements are, by their terms, normally imposed.

(11) The Aircraft shall be operated at all times by a currently certified pilot having the minimum total pilot hours and pilot-in-command hours required by FAA rules or regulations and applicable insurance policies.

(12) Grantor shall use, operate, maintain, and store the Aircraft, and every part thereof, carefully and in compliance with all applicable statutes, ordinances, and regulations of all jurisdictions in which the Aircraft is used, and with all applicable insurance policies, manufacturer's recommendations and operating and maintenance manuals, including, without limitation, FAR 91, 121, or 135, as applicable, and all applicable maintenance, service, repair and overhaul manuals and service bulletins published by manufacturers of the Aircraft or of the accessories, equipment and parts installed in the Aircraft.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon the Note, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances and regulations of the FAA and all other governmental authorities applicable to the use, operation, maintenance, overhauling or condition of the Collateral. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Maintenance of Insurance.** Grantor shall procure and maintain at all times all risks insurance on the Collateral, including without limitation, ground, taxing and in flight coverage, loss, damage, destruction, fire, theft, liability and hull insurance, and such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to



Lender. Grantor shall further provide and maintain, at its sole cost and expense, comprehensive public liability insurance, naming both Grantor and Lender as parties insured, protecting against claims for bodily injury, death and/or property damage arising out of the use, ownership, possession, operation and condition of the Aircraft, and further containing a broad form contractual liability endorsement covering Grantor's obligations to indemnify Lender as provided under this Agreement. Lender's other requirements for insurance as of the date of this Agreement, subject to modification at Lender's reasonable discretion, include the following: (1) the Borrower must be the named insured; (2) the policy must provide coverage to the engines while removed from the Airframe; (3) unless otherwise consented to by Lender in writing, the liability insurance policy must provide a minimum of $10 million liability coverage; (4) the all risks policy must be for the greater of (a) the amount of the Indebtedness or (b) the full insureable value of the Aircraft, and the basis must be the replacement value of the Aircraft; (5) the policy must contain a Breach of Warranty Endorsement up to 90% of the policy; (6) coverage must be maintained, in full force and effect, for the duration of the Note; (7) PNC Equipment Finance, LLC (or its assignee) must be named as lienholder and Loss Payee; (8) the policy must not prohibit the loss payee from making insurance payments upon Grantor's failure to make payments or upon Borrower's default; (9) the policy must include territorial limits; (10) the policy must include coverage for possible seizure and/or impoundment, and/or war risk perils; (11) if the Aircraft is to be operated by a charter operator or is party to a lease agreement with a charter operator, and Lender has consented to such use, the policy must include coverage for charter operation and for spare parts (engines); and (12) the policy must provide for notification of the loss payees upon termination of coverage. Such policies of insurance must also contain a provision, in form and substance acceptable to Lender, prohibiting cancellation or the alteration of such insurance without at least thirty (30) days prior written notice to Lender of such intended cancellation or alteration. Such insurance policies also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Grantor agrees to provide Lender with originals or certified copies of such policies of insurance. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Indebtedness, Grantor will provide Lender with such lender's loss payable or other endorsements as Lender may require. Grantor shall not use or permit the Collateral to be used in any manner or for any purpose excepted from or contrary to the requirements of any insurance policy or policies required to be carried and maintained under this Agreement or for any purpose excepted or exempted from or contrary to the insurance policies, nor shall Grantor do any other act or permit anything to be done which could reasonably be expected to invalidate or limit any such insurance policy or policies.

**Failure To Provide Insurance.** Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense. The cost of any such insurance, at the option of Lender, shall be added to the Indebtedness. Grantor acknowledges that if Lender so purchases any such insurance, the insurance will provide limited protection against physical damage to the Collateral, up to an amount equal to the unpaid balance of the debt. Grantor's equity in the Collateral may not be insured. In addition, the insurance may not provide any public liability or property damage indemnification and may not meet the requirements of any financial responsibility laws.

**Application of Insurance Proceeds.** Grantor shall promptly (not to exceed seven (7) days) notify Lender of any loss or damage to the Collateral in excess of $5,000, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Lender shall have the right to receive directly the proceeds of any insurance payable to Grantor on the Collateral; and the insurance proceeds shall be paid directly to Lender. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including, but not limited to, the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Notice of Encumbrances and Events of Default.** Grantor shall immediately notify Lender in writing upon the filing of any attachment, lien, judicial process, or claim relating to the Collateral. Grantor additionally agrees to


PNC
AVIATION FINANCE

immediately notify Lender in writing upon the occurrence of any Event of Default, or event that with the passage of time, failure to cure, or giving of notice, may result in an Event of Default under any of Grantor's obligations that may be secured by any presently existing or future Encumbrance, or that may result in an Encumbrance affecting the Collateral, or should the Collateral be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Lender.

**Notices of Claims and Litigation.** Grantor will promptly inform Lender in writing of (1) all material adverse changes in Grantor's financial condition, (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting or concerning in any manner the Collateral, and (3) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting or concerning in any manner the Grantor or any Guarantor which could materially affect the financial condition of Grantor or the financial condition of any Guarantor.

**Inspection.** Grantor shall permit employees or agents of Lender at any reasonable time to inspect any and all Collateral (including the logs, books, manuals and records comprising or related to the Collateral) for the Indebtedness and to examine or audit Grantor's books, financial statements, accounts, and records and to make copies and memoranda of Grantor's books, financial statements, accounts, and records. If Grantor now or at any time hereafter maintains any records including but not limited to records related to the Collateral (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Grantor by execution of this Agreement authorizes such party to permit Lender free access (either in paper form or on-line via the internet) to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Grantor's expense.

**Compliance Certificates.** Unless waived in writing by Lender, Grantor shall provide Lender within thirty (30) days after the end of the nine month period following the Funding Date (the "Compliance Due Day") and within thirty (30) days annually of the Compliance Due Day thereafter, with a certificate executed by Grantor's chief financial officer and pilot, or other officer or person acceptable to Lender, certifying that or providing (a) the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate; (b) as of the date of the certificate, no Event of Default exists under this Agreement; (c) the Grantor has maintained and kept the Collateral in good order and repair and in airworthy condition in accordance with the requirements of each of the manufacturers' manuals and mandatory service bulletins and each of the manufacturers' non-mandatory service bulletins which relate to airworthiness; (d) the Grantor has performed, on all parts of the Collateral, all applicable mandatory airworthiness directives, and regulation of the Federal Aviation Administration; (e) the total number of hours and landings on the Airframe; (f) the total number of hours on the Engines since their last major overhaul or core; (g) verification that the Engines are enrolled in an Engine Maintenance Program if they were enrolled in an Engine Maintenance Program at the time of loan application; (h) the Engine serial numbers; (i) contact information (name and phone number) for the maintenance facility that performed the last annual inspection or phase inspection; and (j) the insurance report identified above.

**Additional Assurances.** Grantor will make, execute and deliver to Lender such promissory notes, mortgages, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Note and/or the Indebtedness.

**Continuation.** The foregoing representations and warranties, and all other representations and warranties contained in the Note, the Related Documents, and this Agreement are and shall be continuing in nature and shall remain in full force and effect until such time as the Note and all other obligations of Grantor to the Lender are paid in full and until this Agreement is terminated or cancelled as provided herein.

**PROHIBITIONS REGARDING COLLATERAL.** Grantor represents, warrants and covenants to Lender while this Agreement remains in effect as follows:

**Transactions Involving Collateral.** Without the prior written consent by Lender, (i) Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral, and (ii) Grantor shall not lease, pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender, and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.



**No Commercial Use.** Grantor shall use the Collateral solely for business purposes. Grantor shall not, without the prior written consent of Lender, (i) use the Collateral, or permit the Collateral to be used, in Commercial Operations, or (ii) use the Collateral under a Part 135 Certificate.

**Removal of the Collateral.** Except for routine use, Grantor shall not change the Home Airport or remove the Collateral from the Home Airport without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral. Grantor shall not base, or permit the Collateral to be based, outside the continental United States of America.

**Travel Restrictions.** Grantor shall not operate or locate the Collateral, or permit the Collateral to be operated, located, or flown (i) outside the continental United States without war risk coverage, (ii) in or over any country for which the U.S. State Department has issued travel restrictions, (iii) in or over any country or jurisdiction that does not maintain full diplomatic relations with the United States, (iv) in or over any area of hostilities, or (v) in or over any geographic area not covered by the insurance then in effect. Without limiting the foregoing, Grantor agrees that at no time during the effectiveness of this Agreement shall the Collateral be operated in, flown over, or temporarily located in any jurisdiction, unless the Geneva Convention, together with its necessary enacting rules and regulations (or some comparable treaty and regulations satisfactory to Lender) shall be in effect in such jurisdiction and any notices, financing statements, documents, or instruments necessary or required, in the opinion of Lender, to be filed in such jurisdiction shall have been filed and file stamped copies thereof shall have been furnished to Lender. Notwithstanding the foregoing, at no time shall the Collateral be operated in or over any area which may expose Lender to any penalty, fine, sanction or other liability, whether civil or criminal, under any applicable law, rule, treaty or convention; nor may the Collateral be used in any manner which is or may be declared to be illegal and which may thereby render the Collateral liable to confiscation, seizure, detention or destruction.

**No Removal of Parts.** Except as permitted or required in the section of this Agreement titled "Maintenance, Use, Repairs, Inspections, and Licenses," Grantor shall not remove or permit the removal of any parts, engines, accessories, avionics or equipment from the Aircraft without replacing the same with comparable parts, engines, accessories, avionics and equipment acceptable to Lender and the Aircraft's manufacturer and insurer.

**Modifications.** Grantor shall not, without the prior written consent of Lender, modify the Aircraft in any material way, including but not limited to, the Aircraft's function or operating capability.

**Future Encumbrances.** Grantor shall not, without the prior written consent of Lender, grant any Encumbrance that may affect the Collateral, or any part or parts thereof, nor shall Grantor permit or consent to any Encumbrance attaching to or being filed against the Collateral, or any part or parts thereof, in favor of anyone other than Lender. Grantor shall further promptly pay when due all statements and charges of airport authorities, mechanics, laborers, materialmen, suppliers and others incurred in connection with the use, operation, storage, maintenance and repair of the Aircraft so that no Encumbrance may attach to or be filed against the Aircraft or other Collateral. Grantor shall not file or register (or consent to the filing or registration of) any International Interest, Contract of Sale, or subordination, whether prospective or otherwise (or any amendment, assignment, modification, supplement, subordination or subrogation thereof) pertaining to the Aircraft, with the FAA or the International Registry without the prior written consent of Lender, which may be withheld in its sole discretion. Grantor shall not execute or deliver an IDERA in favor of any party other than the Lender without the prior written consent of Lender, which may be withheld in its sole discretion. Grantor additionally agrees to obtain, upon request by Lender, and in form and substance as may then be satisfactory to Lender, appropriate releases, terminations, discharges, waivers and/or subordinations of any Encumbrances that may affect the Collateral at any time and, at Lender's option cause same to be filed or registered with the FAA or International Registry as applicable.

**GRANTOR'S RIGHT TO POSSESSION.** Until an Event of Default, Grantor shall have the possession and beneficial use of the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender, on Grantor's behalf, may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, International Interests, Contracts of Sale, encumbrances and other claims (including the filing of any interest with the FAA or the registration of any interest with the International Registry), at any time levied or placed on the Collateral and paying all costs for inspecting, repairing, operating, insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among



Page 8 of 15

and be payable with any installment payments to become due during either (1) the terms of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon an Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Note Default.** Any Event of Default under the Note or the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement, the Note, the Indebtedness, or the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Defective Collateralization.** This Agreement, the Note, or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected first priority security interest or lien) at any time and for any reason.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under the Note, this Aircraft Security Agreement, or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Grantor's existence (regardless of whether election to continue is made), the death of Grantor (if Grantor is an individual), the death of any member Grantor or any member withdraws from Grantor (if Grantor is a Limited Liability Company), or any other termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its reasonable discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** If a Guarantor(s) exists: Any of the preceding events occurs with respect to any Guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness.

**Change in Ownership.** If the Grantor is an entity (including without limitation, a partnership, a limited partnership, a limited liability company, or a corporation), any change in ownership of Grantor, whether voluntary or involuntary or resulting from the death of an owner of the Grantor.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender reasonably believes the prospect of payment or performance of this Note is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Idaho Uniform Commercial Code and a creditor under the Convention, and Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies;

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment premium which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other



goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sale of the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) business days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, inspecting, repairing, operating, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Convention Remedies.** In addition to the remedies previously set forth in this Agreement, Lender has all remedies available to a creditor under the Convention (and Grantor affirmatively agrees that Lender has all the rights and remedies, and can exercise all of the rights and remedies, granted a creditor under the Convention), including but not limited to (a) if Grantor is in possession, custody or control of the Collateral, Lender may enter Grantor's or any other person's premises and take possession of such Collateral; (b) to require Grantor to assemble and make available such Collateral at a location selected by Lender; (c) to sell, lease or otherwise dispose or cause the Grantor to sell, lease or otherwise dispose of the Collateral; (d) collect or receive any income, rents or profits arising from the management or use of the Collateral; and (e) procure the deregistration of the registration of the Aircraft and export of the Aircraft to a jurisdiction of Lender's choice pursuant to the IDERA.

**INDEMNIFICATION OF LENDER.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's reasonable attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this Agreement. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following an Event of Default hereunder.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Assignment.** Lender may transfer or assign all or any part of its interest in this Agreement, together with any Related Documents, and Grantor hereby consents to any and all assignments or sales of, or the granting of participations in, this Agreement and any Related Documents, by Lender and any purchaser or assignee of any interest in this Agreement and any Related Documents. Grantor shall not sell, assign, transfer, encumber or convey any of its interests in the Collateral or in this Agreement or any Related Documents, without the prior written consent of Lender, which may be withheld in its sole discretion.



**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Anti-Money Laundering/International Trade Law Compliance.** The Borrower represents and warrants to the Lender, as of the date of this Agreement, the date of each advance of proceeds under the Note, the date of any renewal, extension or modification of the Note, and at all times until the Note has been terminated and all amounts thereunder have been indefeasibly paid in full, that: (a) no Covered Entity (i) is a Sanctioned Person; (ii) has any of its assets in a Sanctioned Country or in the possession, custody or control of a Sanctioned Person; or (iii) does business in or with, or derives any of its operating income from investments in or transactions with, any Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (b) the proceeds of the Note will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (c) the funds used to repay the Note are not derived from any unlawful activity; and (d) each Covered Entity is in compliance with, and no Covered Entity engages in any dealings or transactions prohibited by, any laws of the United States, including but not limited to any Anti-Terrorism Laws. Borrower covenants and agrees that it shall immediately notify the Lender in writing upon the occurrence of a Reportable Compliance Event. As used herein: "**Anti-Terrorism Laws**" means any laws relating to terrorism, trade sanctions programs and embargoes, import/export licensing, money laundering, or bribery, all as amended, supplemented or replaced from time to time; "**Compliance Authority**" means each and all of the (a) U.S. Treasury Department/Office of Foreign Assets Control, (b) U.S. Treasury Department/Financial Crimes Enforcement Network, (c) U.S. State Department/Directorate of Defense Trade Controls, (d) U.S. Commerce Department/Bureau of Industry and Security, (e) U.S. Internal Revenue Service, (f) U.S. Justice Department, and (g) U.S. Securities and Exchange Commission; "**Covered Entity**" means the Borrower, its affiliates and subsidiaries, all guarantors, pledgors of collateral, all owners of the foregoing, and all brokers or other agents of the Borrower acting in any capacity in connection with the Note; "**Reportable Compliance Event**" means that any Covered Entity becomes a Sanctioned Person, or is indicted, arraigned, investigated or custodially detained, or receives an inquiry from regulatory or law enforcement officials, in connection with any Anti-Terrorism Law or any predicate crime to any Anti-Terrorism Law, or self-discovers facts or circumstances implicating any aspect of its operations with the actual or possible violation of any Anti-Terrorism Law; "**Sanctioned Country**" means a country subject to a sanctions program maintained by any Compliance Authority; and "**Sanctioned Person**" means any individual person, group, regime, entity or thing listed or otherwise recognized as a specially designated, prohibited, sanctioned or debarred person or entity, or subject to any limitations or prohibitions (including but not limited to the blocking of property or rejection of transactions), under any order or directive of any Compliance Authority or otherwise subject to, or specially designated under, any sanctions program maintained by any Compliance Authority.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law and Jurisdiction.** The Note, this Aircraft Security Agreement, and the Related Documents have been delivered to Lender and accepted by Lender in the State of Idaho. The Note, this Aircraft Security Agreement, and the Related Documents will be governed by, construed and enforced in accordance with federal laws and the laws of the State of Idaho. If there is a lawsuit, Grantor consents to the jurisdiction of all state and federal courts located within Idaho, and Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Ada County, State of Idaho.

**Notices.** Any notice required to be given under the Note, the Related Documents, or this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Severability.** If a court of competent jurisdiction finds any provision of the Note, the Related Documents, or this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from the Note, the Related Documents, or this Agreement. Unless otherwise required by



law, the illegality, invalidity, or unenforceability of any provision of the Note, the Related Documents, or this Agreement shall not affect the legality, validity or enforceability of any other provision of the Note, the Related Documents, or this Agreement.

**Successors and Assigns.** Subject to any limitations stated in the Note, the Related Documents, or this Agreement, on transfer of Grantor's interest, the Note, the Related Documents, and this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations and liabilities of the Note, the Related Documents or this Agreement.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement, the Note, and the Related Documents shall survive the execution and delivery of this Agreement, the Note, and the Related Documents, and shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under the Note, the Related Documents, or this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any rights under the Note, the Related Documents, or this Agreement shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of the Note, the Related Documents, or this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of the Note, the Related Documents, or this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under the Note, the Related Documents or this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement, the Note, and any Related Documents. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the United States Code and Regulations thereunder dealing with or involving Aircraft, commercial instruments relating to such Aircraft, and in the Idaho Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Aircraft Security Agreement, as this Aircraft Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Aircraft Security Agreement from time to time.

**Borrower.** The word "Borrower" means Khan Aviation, Inc.

**Collateral.** The word "Collateral" means (1) all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral section of this Agreement, and (2) all other property and assets granted as security for the Note, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, assignment, pledge, chattel mortgage, trust receipt, lien, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Commercial Operations.** The words "Commercial Operations" mean the carriage by aircraft in air commerce of persons or property for compensation or hire. Commercial Operations do not include carriage by aircraft in air commerce of Grantor's employees or invitees or Grantor's own property.

**Consolidated Text.** The words "Consolidated Text" means the combination of the Convention and Protocol that was authorized pursuant to Resolution No. 1 adopted by the Cape Town Diplomatic Conference.

**Convention.** The word "Convention" means the Convention on International Interests in Mobile Equipment, and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment, both signed in Cape Town, South Africa on November 16, 2001, as ratified by the United States, together with the



Regulations for the International Registry and the International Registry Procedures, and all other rules, modifications, amendments, supplements, and revisions thereto.

**Encumbrance.** The word "Encumbrance" means any and all presently existing or future mortgages, liens, privileges, International Interest and other contractual and statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Collateral or any part or parts thereof.

**Event of Default.** The words "Event of Default," "Default" or "default" mean any of the events of default set forth in this Agreement and the Note in the sections entitled Default.

**FAA.** The word "FAA" means the United States Federal Aviation Administration, or any successor or replacement administration or governmental agency having the same or similar authority and responsibilities.

**Funding Date.** The words "Funding Date" mean the date the loan is funded.

**Geneva Convention.** The words "Geneva Convention" mean the Convention on the International Recognition of Rights in Aircraft made at Geneva, Switzerland on June 19, 1948, (effective September 17, 1953), together with the necessary enacting rules and regulations promulgated by any particular signatory country.

**Grantor.** The word "Grantor" means Khan Aviation, Inc.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Idaho Uniform Commercial Code.** The words "Idaho Uniform Commercial Code" mean Title 28 of the Idaho Code.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any Related Documents, and shall also include any and all obligations of the Borrower to the Lender or any of its affiliates under any interest or currency swap, future, option or other interest rate protection or similar agreement, including, without limitation, that certain ISDA Master Agreement, of even date herewith, plus all schedules, confirmations and other related documentation, or under or by reason of any foreign currency transaction, forward, option or other similar transaction providing for the purchase of one currency in exchange for the sale of another currency, or in any other manner.

**International Registry.** The words "International Registry" shall mean the international registry created pursuant to the Convention.

**Lender.** The word "Lender" means PNC Equipment Finance, LLC, or any other direct or indirect subsidiary of The PNC Financial Services Group, Inc.

**Note.** The word "Note" means the promissory note executed by Grantor dated January 20, 2017 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, collateral mortgages, cooperation covenants, agreements to provide insurance, resolutions, chattel mortgages, trust receipts, assignment pledges, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Transportation Code.** The words "Transportation Code" shall mean Subtitle VII, Part A of Title 49 of the United States Code, as amended.

The terms "Administrator", "Contract of Sale", "International Interest", "International Registry", "Professional User Entity", "Professional User", "Prospective Contract of Sale", "Prospective International Interest", "Transacting User Entity", shall have the meanings given them in the Convention, unless the context requires otherwise. The term "searchable" shall have the meaning contemplated by Article 32 of the Consolidated Text.

**Counterpart.** This Agreement may be executed in several counterparts and all such executed counterparts shall



constitute one agreement which shall be binding on Borrower and Grantor notwithstanding that both parties are not signatories to the same counterpart or counterparts.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AIRCRAFT SECURITY AGREEMENT AND GRANTOR AGREES TO ITS TERMS. THIS AIRCRAFT SECURITY AGREEMENT IS DATED JANUARY 20, 2017.

GRANTOR:

KHAN AVIATION, INC.

By: _____
     Najeeb A. Khan, President of Khan Aviation, Inc.

PNC
AVIATION FINANCE

EXHIBIT A

FORM OF IRREVOCABLE DE-REGISTRATION
AND EXPORT REQUEST AUTHORIZATION

January 20, 2017

This Irrevocable De-Registration and Export Request Authorization is filed with the Federal Aviation Administration in connection with that certain Aircraft Security Agreement, dated January 20, 2017 by Khan Aviation, Inc., as the Grantor, in favor of PNC Equipment Finance, LLC, as Lender, covering the Aircraft.

To:      United States Federal Aviation Administration

Re:      Irrevocable De-Registration and Export Request Authorization

The undersigned is the registered owner of the CESSNA 560 bearing manufacturer's serial number 5600783 (aka 560-0783 on the International Registry drop down menu) and registration N560CH (together with all installed, incorporated or attached accessories, parts and equipment, the "Aircraft").

This instrument is an irrevocable de-registration and export request authorization issued by the undersigned in favor of PNC Equipment Finance, LLC (the "authorized party") under the authority of Article XIII of the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment. In accordance with that Article, the undersigned hereby requests:

(i) recognition that the authorized party or the person it certifies as its designee is the sole person entitled to:

(a) procure the de-registration of the Aircraft from the United States Civil Aviation Registry as maintained by the Federal Aviation Administration (the "FAA") for the purposes of Chapter III of the Convention on International Civil Aviation, signed at Chicago, on 7 December 1944, and

(b) procure the export and physical transfer of the Aircraft from the United States; a n d

(ii) confirmation that the authorized party or the person it certifies as its designee may take the action specified in clause (i) above on written demand without the consent of the undersigned and that, upon such demand, the authorities in the United States shall co-operate with the authorized party with a view to the speedy completion of such action.

The rights in favor of the authorized party established by this instrument may not be revoked by the undersigned without the written consent of the authorized party.

Please acknowledge your agreement to this request and its terms by appropriate notation in the space provided below and filing this instrument at the FAA.

This Exhibit may be executed in multiple counterparts, which taken together shall constitute one instrument and each of which shall be considered an original for all purposes.

KHAN AVIATION, INC.


By:_____
      Najeeb A. Khan, President of Khan Aviation, Inc.

Agreed to and filed this _____


                                                              FAA notations if applicable
                                                              _____



### FORM OF IRREVOCABLE DE-REGISTRATION
### AND EXPORT REQUEST AUTHORIZATION

#### January 20, 2017

This Irrevocable De-Registration and Export Request Authorization is filed with the Federal Aviation Administration in connection with that certain Aircraft Security Agreement, dated January 20, 2017, by Khan Aviation, Inc., as the Grantor, in favor of PNC Equipment Finance, LLC, as Lender, covering the Aircraft.

To:     United States Federal Aviation Administration

Re:     Irrevocable De-Registration and Export Request Authorization

     The undersigned is the registered owner of the CESSNA 560 bearing manufacturer's serial number 5600783 (aka 560-0783 on the International Registry drop down menu) and registration N560CH (together with all installed, incorporated or attached accessories, parts and equipment, the "Aircraft").

     This instrument is an irrevocable de-registration and export request authorization issued by the undersigned in favor of PNC Equipment Finance, LLC (the "authorized party") under the authority of Article XIII of the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment. In accordance with that Article, the undersigned hereby requests:

     (i) recognition that the authorized party or the person it certifies as its designee is the sole person entitled to:

          (a) procure the de-registration of the Aircraft from the United States Civil Aviation Registry as maintained by the Federal Aviation Administration (the "FAA") for the purposes of Chapter III of the Convention on International Civil Aviation, signed at Chicago, on 7 December 1944, and

          (b) procure the export and physical transfer of the Aircraft from the United States; a n d

     (ii) confirmation that the authorized party or the person it certifies as its designee may take the action specified in clause (i) above on written demand without the consent of the undersigned and that, upon such demand, the authorities in the United States shall co-operate with the authorized party with a view to the speedy completion of such action.

     The rights in favor of the authorized party established by this instrument may not be revoked by the undersigned without the written consent of the authorized party.

     Please acknowledge your agreement to this request and its terms by appropriate notation in the space provided below and filing this instrument at the FAA.

     This Irrevocable De-Registration and Export Request Authorization may be executed in multiple counterparts, which taken together shall constitute one instrument and each of which shall be considered an original for all purposes.

KHAN AVIATION, INC.

By: _____

    Najeeb A. Khan, President of Khan Aviation, Inc.

Agreed to and filed this _____

                               FAA notations if applicable

                               _____



**PNC**
**AVIATION FINANCE**

                               Page 1 of 1

# EXHIBIT C

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.       101
Phone No.

For: Insured Aircraft Title Service, Inc.
     Escrow Department
     4848 S.W. 36th St.
     Oklahoma City, OK 73179
     Attn: Kirk Woford



**Insured Aircraft Title Service, Inc.**
P.O. BOX 19627     405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:   PHONE 800-654-4882

RE:   N226JT - TSAR

---

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | |
|---|---|
| **Object:** | N560CH |
| **Make:** | Cessna |
| **Model:** | 560 |
| **Serial No.:** | 5600783 |

| | | | |
|---|---|---|---|
| **Record Owner:** | Khan Aviation, Inc. | | |
| **Address:** | 25325 Leer Drive, Elkhart, IN 46514 | | |
| **Type:** | Corporation | **Date Registered:** | 2-15-17 |
| **Title:** | President | | |
| **Signed By:** | Najeeb A. Khan | | |

| | | | |
|---|---|---|---|
| **Acquired By:** | Bill of Sale | | |
| **Date:** | 1-23-17 | **Date Filed:** | 1-23-17 & 2-6-17 |
| **Recorded:** | 2-15-17 | **FAA Doc. #** | TK006754 |

| | |
|---|---|
| **Previous Owner:** | SVK Properties LLC |
| **Address:** | 117 Salem Church Rd., Newark, DE 19713 |
| **Date Registered:** | 6-11-13 |

| | | | |
|---|---|---|---|
| **Subject To:** | Security Agreement | | |
| **Dated:** | 1-20-17 | **Amount $** Not Given | |
| **Filed at FAA:** | 1-23-17 | **Recorded:** 2-15-17 | **FAA Doc. #**  TK006755 * |
| **Drawn By:** | Khan Aviation, Inc. | | |
| **Address:** | 25325 Leer Drive, Elkhart, IN 46514 | | |
| **In Favor Of:** | PNC Equipment Finance, LLC | | |
| **Address:** | 4355 Emerald St., Suite 100, Boise, ID 83706 | | |

---

**Page   1   of   2     N560CH     Ser. No.   5600783**          Printed: Feb 24, 2017 9:44 AM

# AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.           101

Phone No.

For: Insured Aircraft Title Service, Inc.
Escrow Department
4848 S.W. 36th St.
Oklahoma City, OK 73179
Attn: Kirk Woford

**I A**
**T S**  **Insured Aircraft Title Service, Inc.**

P.O. BOX 19527        405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:    PHONE 800-654-4882

RE:    N226JT - TSAR

✓ * Covers N560CH and 2 Pratt & Whitney Canada PW535B engines, serial numbers PCE-DE0066 & PCE-DE0067

**This search is subject to the filings reflected on the index of collateral provided by the FAA and Insured Aircraft Title Service assumes no responsibility as to the accuracy of said source, and does not guarantee, insure, or warrant that said FAA index is free of error.**

Report Date:    02/24/2017

7:29 a.m. Central

**INSURED AIRCRAFT TITLE SERVICE**

By _____        K. Selig

**Title Examiner**

KS/ms

**This title search DOES NOT include a search for registrations lodged at the International Registry of Mobile Assets. If this collateral qualifies under the provisions of the Capetown Convention and Aircraft Protocol, a separate search should be obtained.**

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.          101

Phone No.

For: Insured Aircraft Title Service, Inc.
Escrow Department
4848 S.W. 36th St.
Oklahoma City, OK 73179
Attn: Kirk Woford


**Insured Aircraft Title Service, Inc.**
P.O. BOX 19527      405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:   PHONE 800-654-4882

RE:   N226JT - TSAR

---

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | |
|---|---|
| **Object:** | Engine |
| **Make:** | Pratt & Whitney Canada |
| **Model:** | PW535B |
| **Serial No.:** | PCE-DE0067 |

**Record Owner:**    FAA does not register engines by name of owner.  Lien status only is subject to recordation.

| | |
|---|---|
| **Subject To:** | Security Agreement |
| **Dated:** | 1-20-17 |
| **Filed at FAA:** | 1-23-17 |
| **Drawn By:** | Khan Aviation, Inc. |
| **Address:** | 25325 Leer Drive, Elkhart, IN 46514 |
| **In Favor Of:** | PNC Equipment Finance, LLC |
| **Address:** | 4355 Emerald St., Suite 100, Boise, ID 83706 |

**Amount $** Not Given
**Recorded:** 2-15-17  **FAA Doc. #**  TK006755 *

\* Covers N560CH and 2 Pratt & Whitney Canada PW535B engines, serial numbers PCE-DE0066 & PCE-DE0067

This report is subject to the accuracy of the Federal Aviation Administration employees and computers in their record keeping abilities in recordation of liens regarding engines of 550 shp or over.  Specifically excluded from this report are liens, security interests, or other encumbrances against engines which are not specifically noted on the engine data cards maintained by the FAA prior to September 1997, and/or on the engine serial number inquiry screen for encumbrances recorded after September 18, 1997.

---

Page   1   of   2      Engine    Ser. No.   PCE-DE0067          Printed: Feb 24, 2017 9:44 AM

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.          101

Phone No.

For: Insured Aircraft Title Service, Inc.
     Escrow Department
     4848 S.W. 36th St.
     Oklahoma City, OK 73179
     Attn: Kirk Woford



**Insured Aircraft Title Service, Inc.**
P.O. BOX 19527      405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:    PHONE 800-654-4882

RE:   N226JT - TSAR

---

**This search is subject to the filings reflected on the index of collateral provided by the FAA and Insured Aircraft Title Service assumes no responsibility as to the accuracy of said source, and does not guarantee, insure, or warrant that said FAA index is free of error.**

Report Date:    02/24/2017

7:29 a.m. Central

INSURED AIRCRAFT TITLE SERVICE

By                          K. Selig

KS/ms                          **Title Examiner**

**This title search DOES NOT include a search for registrations lodged at the International Registry of Mobile Assets. If this collateral qualifies under the provisions of the Capetown Convention and Aircraft Protocol, a separate search should be obtained.**

---

Page    2    of    2       Engine     Ser. No.    PCE-DE0067          Printed: Feb 24, 2017 9:44 AM

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.          101

Phone No.

For: Insured Aircraft Title Service, Inc.
Escrow Department
4848 S.W. 36th St.
Oklahoma City, OK 73179
Attn: Kirk Woford



**Insured Aircraft Title Service, Inc.**
P.O. BOX 19527      405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:    PHONE 800-654-4882

RE:   N226JT - TSAR

---

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | |
|---|---|
| **Object:** | Engine |
| **Make:** | Pratt & Whitney Canada |
| **Model:** | PW535B |
| **Serial No.:** | PCE-DE0066 |

**Record Owner:**    FAA does not register engines by name of owner.  Lien status only is subject to recordation.

| | | |
|---|---|---|
| **Subject To:** | Security Agreement | |
| **Dated:** | 1-20-17 | **Amount $** Not Given |
| **Filed at FAA:** | 1-23-17 | Recorded: 2-15-17   FAA Doc. #  TK006755 * |
| **Drawn By:** | Khan Aviation, Inc. | |
| **Address:** | 25325 Leer Drive, Elkhart, IN 46514 | |
| **In Favor Of:** | PNC Equipment Finance, LLC | |
| **Address:** | 4355 Emerald St., Suite 100, Boise, ID 83706 | |

* Covers N560CH and 2 Pratt & Whitney Canada PW535B engines, serial numbers PCE-DE0066 & PCE-DE0067

This report is subject to the accuracy of the Federal Aviation Administration employees and computers in their record keeping abilities in recordation of liens regarding engines of 550 shp or over.  Specifically excluded from this report are liens, security interests, or other encumbrances against engines which are not specifically noted on the engine data cards maintained by the FAA prior to September 1997, and/or on the engine serial number inquiry screen for encumbrances recorded after September 18, 1997.

---

Page    1    of    2      Engine     Ser. No.    PCE-DE0066          Printed: Feb 24, 2017 9:44 AM

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.        101

Phone No.

For: Insured Aircraft Title Service, Inc.
    Escrow Department
    4848 S.W. 36th St.
    Oklahoma City, OK 73179
    Attn: Kirk Woford



Insured Aircraft Title Service, Inc.

P.O. BOX 19527        405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:    PHONE 800-654-4882

RE:    N226JT - TSAR

---

This search is subject to the filings reflected on the index of collateral provided by the FAA and Insured Aircraft Title Service assumes no responsibility as to the accuracy of said source, and does not guarantee, insure, or warrant that said FAA index is free of error.

Report Date:    02/24/2017

7:29 a.m. Central

INSURED AIRCRAFT TITLE SERVICE

By                           K. Selig

KS/ms                                 Title Examiner

This title search DOES NOT include a search for registrations lodged at the International Registry of Mobile Assets. If this collateral qualifies under the provisions of the Capetown Convention and Aircraft Protocol, a separate search should be obtained.

---

TK006755 Conveyance Recorded Feb/15/2017 11:56 AM FAA



I hereby certify this is a true
and exact copy of the original.
Insured Aircraft Title Service, Inc.

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
FAA AIRCRAFT REGISTRY
P.O. Box 25504
Oklahoma City, Oklahoma 73125

# AIRCRAFT SECURITY AGREEMENT

**NAME & ADDRESS OF BORROWER:**

Khan Aviation, Inc.
25325 Leer Drive
Elkhart, IN 46514

**NAME & ADDRESS OF SECURED PARTY/LENDER:**

PNC Equipment Finance, LLC
4355 Emerald St.
Suite 100
Boise, ID 83706

**NAME & ADDRESS OF GRANTOR:**

Khan Aviation, Inc.
25325 Leer Drive
Elkhart, IN 46514

ABOVE SPACE
FOR FAA USE ONLY

**THIS AIRCRAFT SECURITY AGREEMENT** dated January 20, 2017, is made and executed between Khan Aviation, Inc. ("Grantor") and PNC Equipment Finance, LLC ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a continuing security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL.** The word "Collateral" as used in this Agreement means the following described Airframe, Engines and Contracts, as defined herein:

| YEAR MFG | AIRCRAFT MANUFACTURER | MODEL NUMBER | SERIAL NUMBER | FAA REGISTRATION NUMBER |
|---|---|---|---|---|
| 2008 | CESSNA | 560 | 5600783 (aka 560-0783 on the International Registry drop down menu) | N560CH |
| ENGINE MAKE | MODEL NUMBER (S) | SERIAL NUMBER (S) | | |
| PRATT & WHITNEY CANADA | PW535B (aka PW500 SERIES on the International Registry drop down menu) | PCE-DE0066 (aka DE0066 on the International Registry drop down menu) | | |
| PRATT & WHITNEY CANADA | PW535B (aka PW500 SERIES on the International Registry drop down menu) | PCE-DE0067 (aka DE0067 on the International Registry drop down menu) | | |
| PROPELLER MAKE | MODEL NUMBER (S) | SERIAL NUMBER (S) | | |
| | | | | |

170231529115
$15.00 01/23/2017


PNC
AVIATION FINANCE

Page 1 of 15

