**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN (GRAND RAPIDS)**

IN THE MATTER OF:

Khan Aviation, Inc., *et al.*[1]

                Debtor.

Bankruptcy Case No. 19-04261-swd
Honorable Scott W. Dales
Chapter 11
**(Jointly Administered)**

_____/

**TRUSTEE'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY FREE
AND CLEAR OF ALL LIENS, INTERESTS AND ENCUMBRANCES
WITH LIENS, INTERESTS AND ENCUMBRANCES ATTACHING TO THE PROCEEDS
OF SALE PURSUANT TO 11 U.S.C. §363 (b) and §363(f)
AND TO PAY BROKER'S COMMISSION AND CLOSING COSTS**

Trustee, Kelly M. Hagan ("Trustee"), by and through her counsel, Beadle Smith, PLC, and hereby states for Trustee's Motion for Authority to Sell Real Property Free and Clear of All Liens, Interests and Encumbrances with Liens, Interests and Encumbrances Attaching to the Proceeds of Sale pursuant to 11 U.S.C. §363 (b) and §363(f) and to Pay Broker's Commission and Closing Costs ("Motion") as follows:

1.      On October 8, 2019, KRW Investments, Inc. ("Debtor") herein filed a Voluntary Petition under Chapter 11 of the Bankruptcy Reform Act of 1978, as Amended, Title 11 ("Petition Date").

2.      Subsequent to the aforementioned filing, Kelly M. Hagan was appointed the duly qualified and acting Chapter 11 Trustee in this matter.

3.      Among the assets of this estate is real estate located in the City of Elkhart, County of Elkhart, State of Indiana to-wit:

> That part of the Southeast Quarter of Section 24, Township 38 North, Range Four East, Cleveland Township, Elkhart County, Indiana, and being a part of the recorded Plat of Northport Industrial Park, recorded in Plat Book 19, page 8, Elkhart County Recorders Office, described as follows:
>
> Commencing at the Northwest corner of the Northeast Quarter of the Southeast Quarter of said Section 24; thence East on the North line of said Northport Industrial Park, 486.20 feet; thence South 502 feet to a 1/2 inch rebar; thence East 365.75 feet to a 1/2 inch rebar; thence South 0 degrees 7 minutes 49 seconds

---

[1] The Debtors in these proceedings are as follows: Khan Aviation, Inc. (Case No. 19-04261), GN Investments, LLC (Case No. 19-04262), KRW Investments, Inc. (Case No. 19-04264), NJ Realty, LLC (Case No. 19-04266), NAK Holdings, LLC (Case No. 19-04267), and Sarah Air, LLC (Case No. 19-04268).

West (recorded South 0 degrees 5 minutes West) 432.07 feet to a 1/2 inch iron pipe; thence West 350.39 feet to a 1/2 inch iron on the Southerly right of way line of Gateway Court; thence Southwesterly on said right of way line on a 75 foot radius curve to the right, 149.88 feet to a 1/2 inch iron; thence on a 50 foot radius curve to the left, 43.81 feet to a 1/2 inch iron; thence West 235.34 feet; thence South 0 degrees 5 minutes 0 seconds West, 419.30 feet; thence North 89 degrees 50 minutes 0 seconds West, 105.92 feet to the place of beginning; thence South 0 degrees 4 minutes 0 seconds West, 117.62 feet; thence North 61 degrees 27 minutes 0 seconds West, 512.18 feet to the Easterly line of Gateway Drive; thence North 28 degrees 33 minutes 0 seconds East, 141.69 feet; thence South 61 degrees 27 minutes East, 404.86 feet; thence South 24 degrees 40 minutes 3 seconds East, 63.96 feet to the place of beginning.

(the "Property").

4. The Trustee seeks approval to sell the Property free and clear of all liens, interests and encumbrances with liens and encumbrances attaching to the proceeds of the sale for the benefit of this bankruptcy estate pursuant to 11 U.S.C. §363(b) and (f).

5. The Property is encumbered by a Deed of Trust granted in favor of Commonwealth Land Title Insurance Company for the benefit of KeyBank National Association dated July 19, 2019 securing obligations in the approximate amount of $1,500,000.00 ("Deed of Trust"). The Deed of Trust is in dispute and is subject to an adversary proceeding being prosecuted by the Trustee, being Adversary Proceeding 19-80119-swd ("Adversary Proceeding"). The Adversary Proceeding asserts that the Deed of Trust should be voided on various grounds including 11 U.S.C. §547 and §548. The Granting of the Deed of Trust was done within the 90 days of the Petition Date to secure obligations of separate entities referred to as the Interlogic Borrowers.

6. To the extent that the Property is also encumbered by real estate taxes owed to Elkhart County, IN, such obligation will be paid at closing.

7. 11 U.S.C. §363(f) permits the sale of the Property by the Trustee free and clear of all interests if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) the entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) its interest is in bonafide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. §363(f).

8. KeyBank consents to the sale set forth in this Motion satisfying 11 U.S.C. §363(f)(2). In addition, the Deed of Trust is in a bonafide dispute as set forth in the Adversary which satisfies §363(f)(4).

9. The Trustee has hired Cressy Commercial Real Estate ("Broker") to assist in the sale of the Property with a commission of 6% of the gross sales price.

10. The Trustee has accepted an offer for the Property in the amount of Six Hundred Eighty-Five Thousand and 00/100 Dollars ($685,000.00) pursuant to the Real Estate Purchase Contract attached hereto as Exhibit A.

11. The Trustee has reviewed sales comparisons for similar properties in the Elkhart, IN market as well as a broker's price opinion and believes that the purchase price for the Property is fair and reasonable.

12. The Trustee seeks approval for the payment of ordinary closing costs including transfer taxes, title insurance premium, prorated real property taxes and water bills etc.

13. All valid liens, interests and encumbrances attaching to the Property will attach to the net proceeds from the sale of the Property to the same extent and priority as if the liens were attached to the Property. The Trustee will not utilize the net proceeds from the sale without the consent of KeyBank or further order of this Court.

14. The transfer of the Property will be "as is, where is" and free and clear of all liens, interests and encumbrances.

15. The sale is subject to bankruptcy court approval and any better offers submitted to the Trustee up until the deadline to object to this sale. Better offers may be submitted to Kevin M. Smith, attorney for the bankruptcy estate by mail or email at ksmith@bbssplc.com. In the event that there are competing bidders, the Trustee will establish bidding procedures to obtain the highest purchase price.

16. In order to approve a sale of substantially all of the Debtor's assets outside the ordinary course of business pursuant to section 363(b), the court must find that the Debtor has articulated a sound business justification for the sale. *Stephens Indus., Inc. V. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986)*(citing Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel*

*Corp.*), 722 F.2d 1063, 1070 (2nd Cir. 1983)). "A sale of assets is appropriate if all provisions of §363 are followed, the bid is fair, and the sale is in the best interests of the estate and its creditors." *See, Matter of Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) quoting *In re Charlesbank Laundry Co.*, 37 B.R. 20, 22 (Bankr. D. Mass. 1983). In the present case, the Trustee has set forth a legitimate reason for the sale as it will provide funds to the bankruptcy estate for the distribution to creditors if she is successful in the Adversary Proceeding. In addition, the prompt sale will reduce administrative expenses associated with maintaining the Property including condominium dues, real property taxes and insurance.

17. The Trustee believes that a sale of the Property is in the best interest of the estate and creditors.

18. Trustee also seeks the approval of the Broker's commission. Broker's employment has been approved by this Court (DN 155). The Broker's commission is 6% of the gross sales price. Trustee seeks this Court's approval to pay the Broker's commission at closing.

19. After the payment of all undisputed liens, closing costs, transfer taxes, tax prorations Broker's Commission and the like, the sale proceeds shall be held by the Trustee subject to a determination of the validity and extent of the attachment of the Deed of Trust to the Property and its proceeds.

**WHEREFORE**, the Trustee requests this Honorable Court enter the Order submitted herewith granting the Trustee authority to sell the Property for the sum of $685,000.00 or better terms, authorization to pay Broker's commission, outstanding real estate taxes, tax prorations, transfer taxes and normal closing costs charged the Seller, a waiver of the fourteen-day stay period

set forth in Federal Rules of Bankruptcy Procedure, Rule 6004(h), and for such other and further relief this Court deems just and proper.

                                                  Respectfully submitted,

                                                  BEADLE SMITH, PLC

                                                  /S/ Kevin M. Smith
                                                 By: Kevin M. Smith (P48976)
                                                 Attorneys for Trustee
                                                 445 South Livernois, Suite 305
                                                 Rochester Hills, MI 48307-2577
Date:   March 10, 2020               (248) 650-6094, Ext. 15; (248) 650-6095 (fax)
                                                 Ksmith@bbssplc.com

PURCHASE AGREEMENT
Commercial-Industrial Real Estate

| Listing Broker | Cressy Commercial Real Estate | By | Shawn Todd |
|---|---|---|---|
| Selling Broker | Cressy Commercial Real Estate | By | Ryan Gableman |

It is understood by all parties that the agency role of Cressy Commercial Real Estate in this transaction is as ☐ an agent or subagent of the Seller, ☐ Buyer-Broker representing the interests of the Buyer, or ☒ Limited Agent serving the limited interests of both Buyer and Seller. Each party to this agreement acknowledges that he/she has been informed regarding the above forms of agency available in the real estate marketplace.

1. PARTIES: <u>KRW Investments, Inc.</u> ("Seller") agrees to sell and convey to <u>RJ Patel, Inc.</u> ("Buyer") and Buyer agrees to buy from Seller the following property for the consideration and upon and subject to the terms, provisions, and conditions hereinafter set forth.

2. PROPERTY: The property commonly known as <u>2900 Gateway Drive</u> situated in the City of <u>Elkhart</u>, <u>Elkhart</u> County, Indiana, together with all buildings and permanent improvements and fixtures attached thereto; and all privileges, and appurtenances pertaining thereto including any right, title and interest of Seller in and to adjacent streets, alleys, or rights-of-way, Seller's interest in and to all leases or rents, and security deposits, Seller's interest in and to all licenses and permits with respect to the Property, Seller's interest in all service, maintenance, management or other contracts relating to the ownership or operation of the Property, and Seller's interest in all warranties or guaranties relating to the Property being sold; all of the above hereinafter collectively called "Property," and whose legal description is: NORTHPORT INDUSTRIAL PARK &; PT IN RETENTION AREA SEC 24; 1.528A

3. PRICE: The total purchase price shall be <u>Six Hundred Eighty-Five Thousand and 00/00</u> dollars (<u>$685,000</u>), payable as follows: <u>Cash upon closing</u>

   ~~Buyer agrees to make application or applications for any financing necessary to complete this transaction within 15 days after acceptance of this Purchase Agreement, and to make a diligent effort in good faith to obtain financing. No more than 60 days after acceptance of this Purchase Agreement shall be allowed for obtaining a written mortgage commitment. If written mortgage commitment is not obtained within the time specified above, this contract shall then terminate at the written request of either party and the earnest money deposit shall be refunded to Buyer without delay.~~

4. EARNEST MONEY: $5,000 is herewith tendered and is to be deposited as Earnest Money with <u>Fidelity National Title</u> as Escrow Agent, upon execution of the Contract by both parties. If this Contract is terminated by the Buyer, with cause as specified herein and within the applicable time period, the earnest money shall be returned to the Buyer. If this Purchase Agreement is terminated for any reason the parties may be provided notice of the proposed disposition of the earnest money proceeds by certified mail RRR. If a party provided such notice at that parties last known address fails to respond, provide written authorization or otherwise object concerning the proposed disposition of such proceeds within 30 days of receipt of such proposed disposition, the party shall be deemed to have approved of such disposition. The parties executing this Agreement shall hold the Broker harmless for any and all liability associated with the good faith disbursement of the earnest money funds pursuant to this Agreement.

1

5. CLOSING: The closing of the sale (the "Closing Date") shall take place at <u>Fidelity National Title</u> on <u>May 29, 2020</u> or earlier with written consent of Buyer and Seller. However, if the Trustee fails to obtain bankruptcy court approval of the sale by April 30, 2020, then the Sales Contract shall become null and void.

6. POSSESSION: The possession of the Property shall be delivered to Buyer <u>at closing</u>, in its present condition, ordinary wear and tear excepted. Seller agrees to maintain the property and related equipment in good condition until possession is delivered to Buyer.

7. INSPECTIONS: Inspections shall be handled in accordance with paragraph ☐ A or ☒ B as set forth below:

   A. BUYER RESERVES THE RIGHT TO HAVE THE PROPERTY INSPECTED. Inspections may include but are not limited to the presence of wood eating insects and compliance with the Americans with Disabilities Act, as well as the condition of the following systems and components: heating, cooling, electrical, plumbing, roof, walls, ceilings, floors, foundation, basement, crawl space, well, septic, other: _____. Said inspections are to be at Buyer's expense by qualified inspectors or contractors, selected by Buyer. Buyer shall have _____ days from the date of acceptance of this Purchase Agreement to notify Seller of any problems revealed by written inspection reports. If the Buyer does not make a written objection to any problem(s) revealed in the report within said time period, the Property shall be deemed to be acceptable. If Buyer does make a written objection, Seller shall have the option of either remedying any defects to Buyer's reasonable satisfaction or, terminating this Agreement by written notice to Buyer. If Seller elects to terminate, Buyer shall either elect in writing to proceed with the closing of the transaction without regard to and waiving the results of such inspection reports or agree that this contract shall be terminated. If the sale contemplated herein is not closed, the Listing Broker may use so much of the earnest money as is necessary to pay for any inspections which have been ordered.

   B. BUYER HAS BEEN MADE AWARE THAT INDEPENDENT INSPECTIONS DISCLOSING THE CONDITION OF THE PROPERTY ARE AVAILABLE AND HAS BEEN AFFORDED THE OPPORTUNITY TO REQUIRE AS A CONDITION OF THE AGREEMENT THE ABOVE MENTIONED INSPECTIONS. However, Buyer hereby waives inspections and relies upon the condition of the Property based upon his own examination and releases the Seller, the Listing and Selling Brokers and all salespersons associated with said Brokers from any and all liability relating to any defect or deficiency affecting the Property, which release shall survive the closing.

8. ~~ENVIRONMENTAL: This sale is contingent upon the Buyer obtaining a Phase I Environmental Audit of the subject property within 30 days of the acceptance of this Purchase Agreement. It is understood the Environmental Audit must be acceptable to the Buyer and Buyer's lender. The cost of the Environmental Audit shall be paid by the Seller. Seller agrees to provide Buyer with a copy of all environmental data and reports presently in Seller's possession upon acceptance of this offer. If Buyer has an objection to items disclosed in such environmental audit provided for herein, Buyer shall provide written objections to Seller within fourteen (14) days after receipt of said audit. In such event, Seller shall have thirty (30) days from the date such objections are disclosed to cure the same, and the Closing Date shall be extended, if necessary. Seller agrees to utilize its best efforts and reasonable diligence to cure such objection, if any. If the objections are not satisfied within such time period, Buyer may terminate this Contract, or waive the unsatisfied objections and close the transaction.~~

9. TAXES: Taxes on said real estate shall be handled in accordance with paragraph ☐ A, ☒ B, ☐ C or ☐ D as set forth below:

2



A. Buyer will assume and agree to pay all installments of taxes on said real estate beginning with the installment due and payable on _____, 20__, and all installments subsequent thereto.

B. All taxes assessed for any prior calendar year and remaining unpaid shall be paid by Seller, and all taxes assessed for the current calendar year shall be prorated between Seller and Buyer on a calendar year basis as of the Closing Date. If the tax rate for taxes assessed in the current year has not been determined at the closing of the transaction, said rate shall be assumed to be the same as the prior year for the purpose of such proration and credit for due but unpaid taxes.

C. All taxes assessed for any prior calendar year remaining unpaid, shall be paid by Seller, and all taxes assessed for the current calendar year shall be prorated between Seller and Buyer on a calendar year basis as of the Closing Date. If the taxes due for the current year have not been determined as of the closing the Buyer and Seller agree to enter into an escrow agreement which provides for the establishment of an escrow of 150% of the amount of the last available tax bill. At such time as the tax bill is finally determined, the escrowed funds may be used to pay the taxes and the parties agree to reprorate the tax bill and the party entitled to a refund from the escrow will receive a refund. If the escrowed funds are not sufficient to pay the tax bill the Seller will promptly pay any additional amounts required to pay the taxes to the Buyer.

D. A tax appeal has been filed prior to closing. Should a refund for the period of Seller's ownership be received after closing such refund for the period in which Seller had ownership of the property will be refunded to the Seller. Should the check(s) be delivered to Buyer, Buyer agrees to forward the checks to Seller immediately upon receipt. Any refund received for the period in which Buyer owned the property shall be refunded to Buyer. For closing, all taxes assessed for any prior calendar year and remaining unpaid shall be paid by Seller, and all taxes assessed for the current calendar year shall be prorated between Seller and Buyer on a calendar year basis as of the Closing Date. If the tax rate for taxes assessed in the current year has not been determined at the closing of the transaction, said rate shall be assumed to be the same as the prior year for the purpose of such proration and credit for due but unpaid taxes.

10. INSURANCE: Insurance shall be handled in accordance with paragraph ☒ A or ☐ B as set forth below:

A. Canceled as of the date of closing and the Buyer shall provide its own insurance.

B. Assigned to the Buyer at Closing and the premium therefore shall be prorated as of the day prior to the Closing Date with the Buyer paying the Seller for the unexpired portion.

11. ~~SURVEY: An ALTA/NSPS Land Title survey shall be furnished at Seller's expense within 30 days after acceptance of this offer. Said survey shall reflect whether the property is located in a designated flood zone area.~~

12. TITLE AND SURVEY APPROVAL: Seller shall deliver to Buyer within <u>ten (10)</u> days after acceptance of this offer a Commitment for Title Insurance (the "Commitment") and, at Buyer's request, legible copies of all recorded instruments affecting the Property and recited as exceptions in the Commitment. If Buyer has an objection to items disclosed in such Commitment provided for herein, Buyer shall provide written objections to Seller within fourteen (14) days after receipt of each such instrument. In such event, Seller shall have thirty (30) days from

3



the date such objections are disclosed to cure the same, and the Closing Date shall be extended, if necessary. Seller agrees to utilize its best efforts and reasonable diligence to cure such objection, if any. If the objections are not satisfied within such time period, Buyer may terminate this Contract, or waive the unsatisfied objections and close the transaction.

13. PRORATIONS AND SPECIAL ASSESSMENTS: Insurance, if assigned to Buyer, interest on any debt assumed or taken subject to, any rents, all other income and ordinary operating expenses of the Property, including but not limited to, public utility charges, shall be prorated as of the day prior to the Closing Date. Any special assessments applicable to the Property for municipal improvements previously made to benefit the Property shall be paid by Seller. Buyer will assume and agree to pay all special assessments for municipal improvements which are completed after the date of this Purchase Agreement.

14. SALES EXPENSES: Seller and Buyer agree that all sales expenses are to be paid in cash prior to or at the closing.

    A. SELLER'S EXPENSES: Seller agrees to pay all costs of releasing existing loans and recording the releases; Owner's Title Policy; tax statements; 1/2 of any closing fee; preparation of Deed and Vendor's Affidavit; the Professional Fee to the Broker(s) in this transaction; Seller shall also pay any required fees or charges which may be imposed by state, city or county ordinance; and other expenses stipulated to be paid by Seller under other provisions of this Contract.

    B. BUYER'S EXPENSES: Buyer agrees to pay all expenses incident to any loan (e.g. loan commitment fees, preparation of note, mortgage, and other loan documents, recording fees, Mortgagee's Title Policy, pre-payable interest, credit reports); 1/2 of any closing fee; copies of documents pertaining to restrictions, easements, or conditions affecting the Property; Buyer shall also pay any fees or charges imposed by state, city or county ordinance; and expenses stipulated to be paid by Buyer under other provisions of this Contract.

15. DEFAULT: If Buyer breaches this Agreement and is in default, (a) Seller may seek specific performance or any other remedy provided by law or equity; or (b) Seller may treat this Agreement as being terminated and receive the Earnest Money as liquidated damages. If Seller successfully enforces specific performance of this Agreement against the Buyer or collects damages from the Buyer due to Buyer's default (by means of a judgment, settlement or by retention of the Earnest Money), then Seller agrees to pay the Listing Broker <u>zero (0%)</u> of the amount collected in payment for Broker's services. Provided, however, the amount paid to Broker shall not exceed the fee that could have been paid had this transaction closed.

    If Seller breaches this Agreement and is in default, then the Earnest Money shall be returned to Buyer as his sole and exclusive remedy. Disputes regarding this contract shall be heard by the U.S. Bankruptcy Court for the Western District of Michigan.

16. ATTORNEY'S FEES: Any signatory to this Contract who is the prevailing party in any legal or equitable proceeding against any other signatory brought under or with relation to the Contract or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

17. ESCROW: The Earnest Money is deposited with Escrow Agent with the understanding that Escrow Agent (a) does not assume or have any liability for performance or non-performance of any party and (b) before the Escrow Agent has any obligation to disburse the Earnest Money in the event of dispute, he has the right to

4



require from all signatories a written release of liability of the Escrow Agent, termination of the Contract and authorization to disburse the Earnest Money. At closing, Earnest Money shall be applied to any cash down payment required, next to Buyer's closing costs and any excess refunded to Buyer.

18. DUTIES OF BUYER AND SELLER AT CLOSING:

   A. At the closing, Seller shall deliver to Buyer, at Seller's sole cost and expense, the following:

   (1) Except in the case of a sale via Conditional Sales Contract, a duly executed and acknowledged Trustee's Deed conveying good and indefeasible title in fee simple to all of the property, free and clear of any and all liens, encumbrances, conditions, easements, assessments, reservations and restrictions, except as permitted herein and/or approved by Buyer in writing and execute a Vendor's Affidavit;

   (2) An Owner's Policy of Title Insurance (the "Title Policy") issued by a reputable title insurance company chosen by the Seller (the "Title Company") in the full amount of the Sales Price, dated as of closing, insuring Buyer's fee simple title to the property to be good and indefeasible subject only to those title exceptions permitted herein, or as may be approved by Buyer in writing, and the standard printed exceptions contained in the usual form of the Title Policy;

   (3) Furnish evidence of its capacity and authority for the closing of this transaction;

   (4) Seller agrees to provide Buyer with a certification establishing that no federal income tax is required to be withheld under the Foreign Investment and Real Property Tax Act, or to consent to withholding of tax from the proceeds of sale as required, unless it is established that the transaction is exempt because the purchase price is $300,000.00 or less and Buyer intends to use the property as his residence;

   (5) Execute all other necessary documents to close this transaction.

   B. At the closing, Buyer shall perform the following:

   (1) Pay the cash portion of the Sales Price in the form of wired funds;

   (2) Execute the note(s) and mortgage(s) provided for herein and cause the funds to be made available to the closing officer for disbursement;

   (3) Furnish evidence of its capacity and authority for the closing of this transaction;

   (4) Furnish to Seller and/or Third Party Lender, at Buyer's expense, a mortgagee's policy issued by Title Company for the benefit of the holder(s) of the mortgage(s) provided for herein;

   (5) Execute all other necessary documents to close this transaction.

19. CONDEMNATION: If prior to Closing Date condemnation proceedings are commenced against any portion of the property, Buyer may, at its option, terminate this agreement by written notice to Seller within ten (10) days

5



after Buyer is advised of the commencement of condemnation proceedings, or Buyer shall have the right to appear and defend in such condemnation proceedings, and any award in condemnation shall, at the Buyer's election, become the property of Seller and reduce the purchase price by the same amount or shall become the property of Buyer and the purchase price shall not be reduced.

20. CASUALTY LOSS: Risk of loss by damage or destruction to the Property prior to the closing shall be borne by Seller. In the event any such damage or destruction is not fully repaired prior to closing, Buyer, at its option, may either (a) terminate this Agreement, or (b) elect to close the transaction, in which event Seller's right to all insurance proceeds resulting from such damage or destruction shall be assigned in writing by Seller to Buyer.

21. MISCELLANEOUS:

   A. Any notice required or permitted to be delivered hereunder, shall be deemed received when personally delivered or sent by United States mail, postage prepaid, certified and return receipt requested, addressed to Seller or Buyer, as the case may be, at the address set forth below the signature of such party hereto.

   B. This Contract shall be construed under and in accordance with the laws of the State of Indiana.

   C. This Contract shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns.

   D. In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or un-enforce ability shall not affect any other provision hereof, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

   E. This Contract constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the transaction and cannot be changed except by their written consent.

   F. Time is of the essence of this Contract. If any date for the performance of any required action under this Agreement falls on a holiday or during the weekend, the date for performance shall be extended to the next business day.

   G. Words of any gender used in this Contract shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise.

   H. All rights, duties and obligations of the signatories hereto shall survive the passing of title to, or an interest in, the property.

   I. By signing below, the parties to this transaction acknowledge receipt of a copy of this agreement and give their permission to the Indiana Commercial Board of REALTORS to publish information regarding this transaction.

6

J.  This Agreement may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

22. FURTHER CONDITIONS: The Purchase Agreement is subject to bankruptcy court approval and better offers received by the Trustee prior to the Bankruptcy Court approval of the subject offer. Seller shall seek Bankruptcy Court approval of the Purchase Agreement within 7 days of obtaining a fully executed Purchase Agreement.

Seller makes no warranties, express or implied, and expressly disclaims the warranties of merchantability and fitness for a particular purpose. The subject property is being sold as is where is.

23. TERMINATION OF OFFER: Unless accepted by Seller and delivered to Buyer by noon EST, the 12th day of March, 2020 this offer to purchase shall be null and void and all parties hereto shall stand relieved and released of any and all liability or obligations hereunder.

24. CONSULT YOUR ADVISORS: Buyer and Seller acknowledge they have been advised that, prior to signing this document, they should seek the advice of an attorney for the legal or tax consequences of this document and the transaction to which it relates.

In any real estate transaction, it is recommended that you consult with a professional, such as a civil engineer, industrial hygienist or other person, with experience in evaluating the condition of the property, including the possible presence of asbestos, hazardous and/or toxic materials and underground storage tanks.

(THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK)

7



25. REAL ESTATE BROKERS: The parties acknowledge that they have not engaged the services of any real estate brokers except Cressy Commercial Real Estate. All commissions shall be paid in accordance with the provisions contained within the Listing Agreement.

This is a legal, binding contract. If not understood seek legal advice.

_/s/ R Patel_  3/9/2020
Buyer's Signature   Date

Buyer's Signature   Date

Roshan Patel
Printed

Printed

46-2538902
Buyer's S.S. # or Taxpayer's I.D. #

Buyer's S.S. # or Taxpayer's I.D. #

19912 Hidden Meadow Trl Goshen IN 46528
Buyer's Address for Notice Purposes

ACCEPTANCE OF PURCHASE AGREEMENT

As the Owner(s) of the Property described herein, the above terms and conditions are accepted this _10th_ day of _March_, 20_20_. Subject to a Attached Addendum

_/s/_  3/10/20
Seller's Signature   Date

Seller's Signature   Date

Printed

Printed

Seller's S.S. # or Taxpayer's I.D. #

Seller's S.S. # or Taxpayer's I.D. #

Seller's Address for Notice Purposes

8

## ADDENDUM TO PURCHASE AGREEMENT

      This addendum shall be made part of the Purchase Agreement dated March 9, 2020 for real property commonly known as 2900 Gateway Drive, Elkhart, IN, by and between KRW Investments, Inc. as Seller and RJ Patel, Inc., as Buyer. To the extent that this Addendum conflicts with the terms contained in the Purchase Agreement, the terms of this Addendum shall control.

1. The following sentence shall be added to the end of paragraph 5 of the Purchase Agreement: Notwithstanding the foregoing, the Closing Date may be adjourned by the Seller in the event that the Motor Car Auction being conducted by RM Sotheby's scheduled for May 1-2, 2020 on the Property and/or 2800 Aeroplex Drive, Elkhart, IN is postponed to a later date. In such event, the Closing Date shall be within 30 days after the conclusion of the Motor Car Auction or any other date as agreed to in writing by the Seller and Buyer.

Seller:

KRW INVESTMENTS, INC.

By: _____  Dated: 3/10/20
Kevin M. Smith on behalf of Kelly M.
Hagan, Chapter 11, Trustee


Buyer:

RJ Patel, Inc.

_____  Dated: 3/10/2020
Roshan Patel
Its: President